COMPTROLLER OF the CURRENCY, Plaintiff,

v.

CALHOUN FIRST NATIONAL BANK, et al., Defendants.

Civ. A. No. 85–2800.

United States District Court, District of Columbia.

Dec. 20, 1985.

---

Charles M. Horn, Robert B. Serino, Eugene M. Katz, Deborah S. Hechinger, Ralph E. Sharpe, Robert S. Pasley, Ellen Broadman, Comptroller of the Currency, Washington, D.C., for plaintiff.

John D. Hawke, Howard N. Cayne, Arnold &. Porter, Washington, D.C., Kenneth L. Millwood, John L. Latham, Smith, Gambrell & Russell, Atlanta, Ga., for defendant Calhoun First Nat. Bank.

Nickolas P. Chilivis, Gary G. Grindler, Anthony L. Cochran, Chilivis & Grindler, Atlanta, Ga., Jamie S. Gorelick, Miller, Cassidy, Larroca & Lewin, Washington, D.C., for defendant T. Bertram Lance.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

Plaintiff Comptroller of the Currency (Comptroller) brought this action for a pre-liminary injunction against defendants Calhoun First National Bank (CFNB) and T. Bertram Lance (Lance), seeking injunctive relief to remedy alleged violations of the federal securities laws. Both defendants have responded by filing a series of preliminary motions which are now pending, including motions to transfer this case to the Northern District of Georgia.[1] For the reasons stated herein, the Court grants defendants' motions to transfer and leaves resolution of the remaining motions to the transferee court.

### I

The Comptroller of the Currency is a federal agency with authority, *inter alia*, to administer and enforce the reporting and proxy provisions of the Securities Exchange Act against entities with securities registered at the office of the Comptroller of the Currency.[2] CFNB is a national banking association located in Calhoun, Georgia, with its common stock registered with the Comptroller. CFNB and its officers and agents are thus subject to the securities laws and the regulations promulgated thereunder and are policed in their compliance by the Comptroller.[3] The Comptroller instituted an investigation of CFNB in October 1984, which resulted in the institution of several actions against the defendants, including this civil action.

In this suit, the Comptroller requests a preliminary injunction against CFNB and Lance, the bank's chairman and principal shareholder, seeking to restrain defendants "from further violations of the reporting and proxy provisions of the Securities Ex-

---

1. Defendant Lance has also filed a motion for a stay, a request for an extension of time to respond to the Comptroller's complaint, and three motions to dismiss on various jurisdictional grounds. Defendant CFNB has filed similar motions for an extension of time to respond to the Comptroller's complaint and one motion to dismiss. The Comptroller has opposed all nine motions.

2. See § 12(i), 13(a) and 14(a), 15 U.S.C. §§ 78l(i), 78m(a), and 78n(a).

3. See § 12(i), 13(a), and 14(a), and the regulations promulgated thereunder. One of the defendants' motions to dismiss disputes the Comptroller's jurisdiction under the relevant statutory provisions to enforce the securities laws. The Court does not pass on the merits of that motion, leaving that issue to the transferee court. The Court merely assumes for present purposes that the Comptroller has indeed power to do under the statute what he claims he may do.

change Act of 1934. . . ."[4] The Comptroller alleges that the defendants have violated and will continue to violate the securities laws in two ways: (1) by failing to disclose material information to CFNB shareholders in the bank's proxy solicitation statements, and (2) by failing to disclose material information to the Comptroller in the annual reports CFNB is required under law to file with the Office of the Comptroller.[5]

As relief from these alleged violations, the Comptroller seeks injunctive orders from the Court as follows: an injunction to restrain the defendants from issuing proxy materials and annual reports in the future which contain the material omissions complained about above; another to require defendants to amend the allegedly misleading proxy materials and annual reports issued in the past to include the material information previously omitted; and a third to require Lance to tender to CFNB all information within his possession necessary to enable CFNB to comply with the order to amend its past filings.

## II

Both defendants have responded to the Comptroller's complaint by a multitude of preliminary motions. Most pressing are motions filed by each defendant to transfer this action to the Northern District of Georgia, Rome Division, pursuant to 28 U.S.C. § 1404(a).[6] Defendants contend that this action more properly belongs in the Northern District of Georgia because the transactions underlying the alleged securities violations all occurred there; all but one prospective witness resides there; all original documents are located there; and several other legal actions arising out of the same investigation have already been instituted there. The Comptroller opposes the motion on several grounds which are discussed *infra.*

Section 1404(a) of Title 28 permits transfer of an action from a district in which venue is proper to another district in which the action might have been brought if the transfer is "for the convenience of parties and witnesses, [and] in the interest of justice."[7] Since there is no dispute that venue is proper in this district or that this action "might have been brought" in the Northern District of Georgia,[8] the question of whether this action should be transferred to the Northern District of Georgia de-

---

**4.** Specifically, plaintiff alleges that defendants have violated section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), as well as the regulations promulgated thereunder, codified at 12 C.F.R. 11.5 and 11.51.

**5.** The "material information" the defendants allegedly failed to disclose in the proxy statements and the annual reports falls roughly into four categories: (1) that Lance engaged in repeated check-kiting at the expense of CFNB; (2) that Lance made or caused the bank to make several improper "insider" loans; (3) that Lance improperly received money which rightfully belonged to CFNB from a credit life insurance policy; and (4) that CFNB bought real estate in which Lance had a material interest.

**6.** Although both defendants have filed separate motions to transfer, the motions are virtually identical and will be treated together here as one.

**7.** Section 1404(a) provides:
For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

**8.** Defendants do not dispute that the action was properly brought in this district. The special venue provision governing the Comptroller's action, 15 U.S.C. § 78aa, provides that an enforcement action may be brought in any district where any act or transaction instituting the violation occurred or where the defendant resides or transacts business. *See Investors Funding Corp. v. Jones,* 495 F.2d 1000, 1002 (D.C.Cir. 1974). This Circuit has held that filing an allegedly false and misleading statement constitutes an "act or transaction constituting the violation" within the meaning of 15 U.S.C. § 78aa. *Securities and Exchange Commission v. Savoy Industries,* 587 F.2d 1149, 1155 (D.C.Cir.1978); *accord Securities and Exchange Commission v. Carriba Air, Inc.,* 681 F.2d 1318 (11th Cir.1982). The filing of the proxy materials and the annual reports at issue in this case occurred in the District of Columbia at the office of the Comptroller of the Currency. Consequently, venue is properly laid in the District of Columbia. *See Investors Funding Corp. v. Jones, supra,* at 1002. It is worthwhile to note, however, that although venue is proper in the District of Columbia, there is no factual nexus between this case and the District of Columbia other than that the filings were made at the office of the Comptroller here.

pends on whether the plaintiff's choice of forum [9] outweighs "the convenience of the parties and witnesses, [and] ... interest of justice."[10]

Defendants contend that trial of this action in Georgia will be more convenient for both of the defendants and the plaintiff than a trial here. The bank's principal place of business is in northern Georgia; Lance resides and works in northern Georgia;[11] and all of the employees and management of CFNB, many of whom defendants claim will be called as witnesses, reside in northern Georgia. Consequently, defendants argue, it would be extremely disruptive to the bank's business and thus inconvenient to try the case in this district. *See Securities and Exchange Commission v. Page Airways, supra*, 464 F.Supp. at 463–64 (disruption of defendant's business due to trying forum in distant forum which would cause prolonged absence from business of top executives and employees factor to be weighed under section 1404(a)). Defendants also claim that the transfer will not be inconvenient for the plaintiff because the Comptroller maintains a fully-staffed field office in Atlanta, Georgia, which actually conducted the investigation giving rise to this suit, and that almost all

of the government employees having knowledge of this matter will be employees of that office.[12] Further, since the investigation was conducted there, all of the depositions taken, records obtained, and other evidence gathered in the course of the investigation are in locations embraced by the Northern District of Georgia. Finally, since it is undisputed that all of the underlying transactions at issue in this case took place in northern Georgia,[13] most of the witnesses who would be expected to testify about the underlying transactions reside in Georgia.[14]

The Comptroller does not dispute the claims regarding the location of the witnesses, the evidence, or the residence of the parties. He contends instead that convenience should carry little weight here because this case will be largely a documentary one and will require a minimum of live testimony. If that characterization were correct, the Court might indeed discount defendants' assertions regarding the convenience of witnesses and parties. However, the Comptroller's argument rests upon an assumption that is deficient.

The Comptroller asserts that the case will be largely a documentary one because only two issues will be involved—whether

Similarly, there does not appear to be any dispute that the action "might have been brought" in the Northern District of Georgia. Both defendants reside in and transact business in Calhoun, Georgia, located in the Northern District of Georgia, thus making venue proper in the Northern District of Georgia under the terms of section 78aa.

**9.** The Court notes that some decisions in this Circuit suggest that the plaintiff's choice of forum is no longer entitled to a great deal of weight (*Securities and Exchange Commission v. Savoy Industries, Inc.*, 587 F.2d at 1154; *Securities and Exchange Commission v. Page Airways*, 464 F.Supp. 461, 464 n. 7 (D.D.C.1978)), particularly when there is an insubstantial factual nexus with the plaintiff's choice. In any event, section 1404(a) factors militate strongly enough in favor of transfer.

**10.** In consideration whether to transfer a case pursuant to section 1404(a), the District Court has broad discretion to give "individual, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964). The de-

fendant has the burden of proving why there should be a change of forum. *Securities and Exchange Commission v. Savoy Industries, Inc.*, 587 F.2d 1149, 1154 (D.D.C.1978); 15 Wright, Miller & Cooper, *Jurisdiction and Related Matters* § 3848.

**11.** CFNB's principle place of business is at 215 North Wall Street, Calhoun, Georgia. Defendant Lance resides in Calhoun, Georgia.

**12.** Plaintiff does not dispute this claim.

**13.** Only the filing of the proxy statements and annual reports occurred in the District of Columbia.

**14.** It should also be noted that based upon the witnesses called at an administrative proceeding related to this litigation currently pending before an administrative tribunal, see discussion *infra*, defendant CFNB claims that the Comptroller could call as many as 34 witnesses and the bank 33 witnesses. Only two out of the possible 67 witnesses do *not* reside in the northern district of Georgia.

the underlying transactions occurred and whether their disclosure was required by law—and that neither of these issues involves fraud or even scienter. That assumption does not take account of the fact, however, that necessary prerequisites to the element of disclosure—*e.g.*, whether the bank made improper inside loans—may turn out to be fiercely contested on the facts. If that is so, and there is reason to believe that it will be so,[15] the testimony of the individuals involved on both sides of the various transactions will clearly be important. On that basis, the Northern District of Georgia is a more appropriate forum than this District.

A second significant factor bearing upon a decision regarding a section 1404(a) motion is whether the transfer would be in the interest of justice. See 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction*, § 3854 (1976).

In this regard, defendants rely primarily upon the fact that a number of other actions are currently pending in various courts in northern Georgia which arose from the same Comptroller investigation leading to the institution of this lawsuit, and that transfer of the case would allow coordination of pretrial discovery and otherwise with respect to all these cases.

There are, indeed, at least five related actions pending in various stages in the courts in northern Georgia: (1) actions to quash subpoenas related to the Comptroller's investigation; (2) a civil action in federal court filed by Lance alleging Privacy Act violations arising from the Comptroller's handling of the investigation; (3) an administrative cease and desist proceeding pursuant to 12 U.S.C. § 1818(b) pending before an administrative law judge; (4) an administrative proceeding to remove Lance

from office pursuant to 12 U.S.C. § 1818(e), also currently pending before an administrative tribunal; and (5) an ongoing federal criminal grand jury investigation.

To be sure, as the Comptroller asserts, some of these actions, or all of them, involve legal issues different than those underlying the lawsuit before this Court. However, all of these actions clearly have the same factual underpinning as this case since they all arise from the same Comptroller investigation. While a transfer of this case would not be likely to result in the consolidation of this action with the others, at a minimum such a transfer could facilitate the coordination of pretrial discovery. Additionally, since the same witnesses and documents will probably be important to all actions, it would save the time and energies of the witnesses, the parties, and the attorneys to have all the actions litigated in the same geographical area. By contrast, it would probably result in a waste of judicial and other resources to litigate one case arising out of these facts in the District of Columbia and all the others in Georgia.[16]

For the reasons stated, the Court concludes that a transfer is warranted pursuant to section 1404(a). Accordingly, defendants' motions to transfer this cause of action to the Northern District of Georgia will be granted.

---

**15.** Defendants' numerous filings in this relatively new case indicate that neither defendant intends simply to acquiesce in the Comptroller's factual descriptions.

**16.** The Comptroller asserts that these considerations are outweighed by his claim for speedy relief. But there is no reason to believe that in that respect a transfer would make any difference. There is no evidence either that signifi-

cant docket congestion exists in the Georgia courts which might delay trial (see *Securities and Exchange Commission v. Page Airways, supra,* 464 F.Supp. at 464, 465) or that the litigation in this Court has advanced to such a stage that transfer would result in delay. See *Securities and Exchange Commission v. Savoy Industries, Inc., supra,* 587 F.2d 1149, 1156 (D.C.Cir. 1978).