AIR LINE PILOTS
ASSOCIATION, Plaintiff,

v.

EASTERN AIR LINES, Defendant.

Civ. A. No. 87–2002.

United States District Court,
District of Columbia.

Oct. 15, 1987.

James L. Linsey, Cohen, Weiss and Simon, New York City, Jonathan A. Cohen, Air Line Pilot Ass'n, Intern., Washington, D.C., for plaintiff.

Michael J. Madigan, Michelle L. Gilbert, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for defendant.

## ORDER

### (Denying Motion to Transfer Venue)

BARRINGTON D. PARKER, District Judge.

Plaintiff, Air Line Pilots Association ("ALPA"), brings this action against Eastern Air Lines ("Eastern") alleging that defendant—in concert with its parent company Texas Air—is attempting to subvert and undermine ALPA's status as the exclusive collective bargaining representative for pilots employed by Eastern. According to plaintiff, this subversion is accomplished by transferring Eastern's assets and work opportunities to non-union Texas Air subsidiaries. Relying upon the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA"), plaintiff seeks injunctive, declaratory and monetary relief. Eastern denies the allegations and at the same time has moved to transfer this proceeding to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).[1] Defendant contends that the interests of justice warrant transferring this action because the Florida Court already has juris-

---

1. Section 1404(a) provides: "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

diction over an action involving the same parties and similar factual and legal issues. Eastern also claims that Florida is a more convenient forum for the parties and witnesses. In opposition to the motion, plaintiff argues that this action involves different issues from those presented in the Florida action and that, in any event, the case is no longer pending in Florida.[2] It also argues that defendant has not met its burden in demonstrating that Florida would be a more convenient forum.

For the reasons set forth below, the Court finds that Eastern has failed to demonstrate that a transfer of venue is warranted and its motion to transfer is denied.

■ In considering a Section 1404(a) motion, the Court must take into account the interests in conserving judicial resources, the convenience of the parties and witnesses, access to sources of proof, and practical considerations in facilitating a final resolution of the litigation in an expeditious and inexpensive manner. *See Comptroller of Currency v. Calhoun First National Bank*, 626 F.Supp. 137, 139, 141 (D.D.C.1985); *SEC v. Page Airways, Inc.*, 464 F.Supp. 461, 463 (D.D.C.1978). Plaintiff's choice of forum is given paramount consideration and the burden of demonstrating that an action should be transferred is on the movant. *See Inter. B'hd of Painters v. Best Painting and Sandblaster Co.*, 621 F.Supp. 906, 907 (D.D.C.1985).

Defendant purports that transferring this action to the Florida federal court would conserve judicial resources because the underlying concern motivating both actions is identical: Eastern is attempting to undermine the representational status of ALPA—and the presiding judge in Florida is already familiar with the factual and legal issues of this claim.[3]

■ Contrary to defendant's contention, the legal issues are not the same nor are

they predicated on similar factual matters. *See National Union Fire Ins. v. R.H. Weber Exploration*, 605 F.Supp. 1299, 1303 (S.D.N.Y.1985) ("A prime factor to be considered is whether the issues in both actions are substantially the same and whether their determination rests upon the same factual matters.") The major issue before the Florida Court was whether the parties had a "meeting of the minds" and entered into a collective bargaining agreement. After scrutinizing the facts surrounding the negotiation, signing, and ratification of the agreement and analyzing the case law concerning contract formation, the Court entered summary judgment on behalf of ALPA concluding that the parties had entered into a valid collective bargaining agreement. Eastern was then ordered to submit to arbitration pursuant to the provisions of the RLA. In contrast, this case concerns alleged violations of the RLA, specifically whether Eastern's transfer of work and work opportunities to non-union subsidiaries violates the RLA's collective bargaining, status quo and representational provisions, 45 U.S.C. §§ 152 and 156. To resolve ALPA's complaint, the Court will need to elicit facts concerning Eastern's alleged diversion of work or work opportunities, determine whether these allegations are true, and if so, analyze whether such asset transfers constitute a violation of the company's obligations under the RLA. These factual and legal matters were never examined in the Florida action. In fact, on May 8, 1987, the Florida Court specifically stayed any discovery into these matters as irrelevant to the contract dispute. Because the factual and legal matters relevant to this suit would be fresh and novel to the Florida Court, transfer to that court would not serve the interests of judicial efficiency.

The second reason advanced for transfer is that trial of this action in Florida would

---

**2.** The Florida action was dismissed on summary judgment on September 25, 1987. *Eastern Air Lines Inc. v. Air Lines Pilots Association, et al.*, 670 F.Supp. 947 (S.D.Fla.1987). However, Eastern, the plaintiff in that action, filed a motion for reconsideration which is currently pending.

**3.** Defendant maintains that if this action were transferred to the Southern District of Florida due to the similarity of the underlying claims, it would probably be assigned to Judge Lenore Nesbitt who presided over the "related" case, *Eastern Air Lines, Inc. v. Air Line Pilots Association, et al., supra* fn. 2.

be more convenient to the parties and their respective witnesses. Defendant points out that Eastern is headquartered in Miami as is all the supporting documentation necessary to support the action. Though Eastern concedes that ALPA's headquarters is located in Washington, D.C., it contends that the real party in interest is the Master Executive Council ("MEC") which represents ALPA membership at Eastern. The MEC is headquartered in Florida and would not be inconvenienced by litigating in that state.

One measure of convenience to the parties is the expense of transportation and the length of time that witnesses would be absent from their jobs. *Hotel Constructors Inc. v. Seagrave Corp.,* 543 F.Supp. 1048, 1051 (N.D.Ill.1982). According to this measure, neither party will be inconvenienced by litigating this action in the District of Columbia ("District" or "D.C."). Indeed, ALPA has identified several potential witnesses who reside in the District. Declaration by James L. Linsey, Sept. 27, 1987 at 3. Further, many of ALPA's officers who reside outside this region regularly do business in the District and will not be inconvenienced if called to testify in this forum. Similarly, Eastern would not be financially burdened by defending this litigation in the District. Even if several of Eastern's witnesses reside in Miami, the company can fly them to D.C. at negligible expense and effort. Furthermore, several of Eastern's executives listed as potential witnesses frequently travel to this district and have recently attended lengthy depositions in connection with a separate proceeding which Eastern chose to institute in this forum against ALPA, *Eastern Air Lines Inc. v. The Air Line Pilots Association,* No. 87–1063 (filed D.D.C. Apr. 16, 1987). Declaration of James L. Linsey, Oct. 6, 1987 at 4. If Eastern can choose to initiate a suit against ALPA in this forum, it certainly can defend a suit against the same party in the same forum without undue inconvenience.

Despite Eastern's claim that the vast bulk of the documentation is located in Miami, it would not be severely encumbered by having to photocopy these materials and transport them to this area. No matter where the litigation proceeds, these materials will have to be photocopied and shipped to Eastern's lawyers who live and work in the District area and to ALPA's lawyers who likewise live and work in D.C. as well as in New York. Once the material is photocopied, boxed and sent to the District, it would not be a significantly greater hardship to send an additional copy of these documents to the courthouse.

Finally, at oral argument, Eastern's counsel criticized ALPA for failing to cite any case authority in support of its opposition to the transfer motion. Besides the fact that counsel in its papers discounted the relevancy of case authority, arguing that each issue of convenience is "dependent on the facts of the particular case," [4] Eastern's Reply at 10 note 11, the decisions Eastern relies upon highlight the weakness of its own motion. Defendant's lead authority, *Securities and Exchange Commission v. Page Airways, Inc.,* 464 F.Supp. 461 (D.D.C.1978) involved a suit against an aviation company and six individual officers and directors. Not only was the company's headquarters located in Rochester, as were the majority of both parties' witnesses, and the bulk of the documentation, but the company argued that its business would be substantially disrupted by having to litigate in D.C. because the individual defendants comprised the majority of its senior management. Similarly in *Comptroller of Currency v. Calhoun First Nat. Bank,* 626 F.Supp. 137 (D.D.C.1985) the defendants, were a Georgia state bank, and a Georgia resident, all the relevant documents were located in Georgia, as were all the witnesses and the Comptroller's staff who conducted the investigation giving rise

---

**4.** As our Circuit has advised when evaluating a motion to transfer; "the proper technique to be employed is a factually analytical, case-by-case determination of convenience." *Securities and Exchange Commission v. Savoy Industries,* 587 F.2d 1149, 1154 (D.C.Cir.1978). Despite the fact-specific nature of the inquiry, precedents serve as useful guideposts in measuring and balancing the relevancy of all the various factors.

to the suit was located in Georgia. In addition to the strong bonds to Georgia, the defendants claimed that litigating in the plaintiff's chosen forum, D.C., would be extremely disruptive to its business. Finally, several suits arising out of that very investigation were pending in Georgia. In light of all these connections to Georgia, the Court concluded that a transfer to Georgia would be more convenient for all and that judicial resources would be protected by coordination of pretrial discovery.[5]

In contrast to the circumstances in *Page* and *Comptroller*, where the parties had no contacts to the chosen forum, plaintiff has shown a variety of connections demonstrating that D.C. is not an inconvenient location. Furthermore, unlike the defendants in *Page* or *Comptroller*, Eastern has never suggested that defending this action in the District would immobolize or even disrupt its business operations. Finally, as already discussed, the transfer of this action to Florida would not promote judicial efficiency.

Eastern has failed to carry its burden of demonstrating that the forum chosen by ALPA is inconvenient or contrary to the interests of justice.

Accordingly, it is this 14th day of October, 1987,

### ORDERED

That Defendant's Motion to Change Venue is denied.

A Scheduling Order is also entered on this date establishing a discovery schedule and setting forth pretrial and trial requirements and dates.

---

**5.** In Eastern's third "primary" authority, *LaBrier v. A.H. Robins Co.,* 551 F.Supp. 53 (D.D.C.1982), the court transferred the product liability action to the Eastern District of Missouri after concluding that every significant event occurred there. All doctors who treated the plaintiff resided in Missouri; plaintiff's records were stored in Missouri and both plaintiff and all defendants resided in Missouri. Finally if that case had been litigated in D.C. several of the defendants would have to be dismissed for lack of personal jurisdiction. In contrast to the lack of contacts to the D.C. forum in *LaBrier,* several of the potential witnesses reside in D.C. and the plaintiff's office is located in D.C.