**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

v.

**Dwayne A. FRASCH and Bobbie Frasch, Defendants.**

**No. 89 Civ. 2210 (LLS).**

United States District Court, S.D. New York.

Jan. 23, 1990.

**1076**

Richard Russell, D'Amato & Lynch, New York City, for plaintiff.

Dwayne A. Frasch and Bobbie Frasch, pro se.

## OPINION AND ORDER

STANTON, District Judge.

National Union Fire Insurance Company of Pittsburgh ("National Union"), an issuer of financial guarantee bonds, sues to enforce an indemnity agreement between itself and limited partners in a tax shelter limited partnership, and to enforce its rights as subrogee on the limited partners' promissory notes which it honored on their behalf. National Union issued a bond which guaranteed, to the limited partnership and to the bank which financed the limited partnership, that the limited partners would make all of their capital contributions represented by the promissory notes. When the limited partners stopped making their required contributions, National Union made them on their behalf. Now it seeks reimbursement, under the indemnity agreement it claims defendants gave them at the time it guaranteed their payments, and as subrogee on the notes on which they defaulted.

The defendant limited partners, Dwayne and Bobbie Frasch, move to dismiss for lack of personal jurisdiction under Fed.R. Civ.P. 12(b)(2), improper venue under Fed. R.Civ.P. 12(b)(3), failure to name indispensable parties under Fed.R.Civ.P. 19(b), or to transfer this action to the United States District Court for the District of Colorado under 28 U.S.C. § 1404(a) or § 1406(a). The motion to transfer under section 1404(a) is granted.

## BACKGROUND

National Union, a Pennsylvania corporation, has its principal place of business in New York City and does business in many states. Dwayne and Bobbie Frasch are both residents of Colorado.

In March, 1985 the Fraschs purchased a limited partnership interest in Sacramento Office Park Associates Limited Partnership ("SOPA"), a New York limited partnership. The purchase price for the interest included an initial cash payment of $3975 and promissory notes for $117,900 (the "notes"). The Fraschs state that their financial plan-

ner, Phillip Trujillo, and another securities representative, Raymond Blitstein,

> had us sign all of the paperwork for the investment in the partnership in blank, stating that they would fill in the details based upon previous financial information that we had given Trujillo. We requested a prospectus but were not given one. We were told that the total cost of the investment would be the principal sum of $120,000, and that it was payable in installments we could afford. We were not informed that there would be finance charges, that the investor note would be assigned to a third party, or that we were applying for any type of an investor bond. It was not disclosed to us that we were making a speculative investment or that there were suitability requirements. We didn't know that we didn't come anywhere close to meeting the suitability requirements for investing in the partnership.
>
> Affidavit of Dwayne Frasch, sworn to April 22, 1989, ¶ 4.

The Fraschs allege that Trujillo and Blitstein were National Union's agents.

> The promissory notes state that they shall be governed by, and interpreted under, the laws of the State of New York applicable to contracts made and to be performed therein without giving effect to the principles of conflict of laws. The parties hereto consent to the jurisdiction of the courts of the State of New York to resolve any controversy or claim arising out of or relating to this Note. For such purposes, venue shall be in the County of New York, which shall be the place of trial.

National Union issued a financial guarantee bond in favor of Intercontinental Monetary Corporation, and The Connecticut National Bank, as the permitted assignee, guaranteeing payment of the limited partners' notes.[1] The Connecticut National Bank assigned the Bond to the Gulf Bank, K.S.C., New York Agency. That bank assigned the Bond to Credit du Nord (the "Bank").

In return, the Fraschs executed an indemnity agreement whereby they agreed to reimburse National Union for any payments made on their behalf. The indemnity agreement contains a permissive forum selection clause which states:

> Any action or proceeding of any kind against the Undersigned arising out of or by reason of this Indemnification and Pledge Agreement may be brought in any state or federal court of competent jurisdiction in any County in the State of New York, in addition to any other court in which such action might properly be brought.

The Fraschs failed to make payments on their notes and National Union paid the Bank $11,294.90 on their behalf. National Union commenced this action in the Supreme Court of the State of New York, New York County, to recover the amount it paid the Bank under the terms of the indemnity agreement, and as subrogee of the Bank's rights under their notes. The Fraschs removed the action to this court pursuant to 28 U.S.C. § 1441(a), which permits removal when citizenship of the parties is diverse.

The Fraschs have also commenced an action in Colorado state court against SOPA, the general partner of SOPA, Charterhouse Capital Investment Corp. ("Charterhouse"), the distributor of SOPA, Rothschild Registry International, Inc., and others seeking rescission of their investment and damages. *Frasch v. Pro–Financial Securities, Inc. et al.,* 88–Cv–697 (Larimer County Dist.Ct., filed June 8, 1988). They state that they "are in the process of filing a motion to join National Union as an indispensable party pursuant to Rule 19(a) of the Colorado Rules of Civil Procedure[.]" (Defendants' memo in support of motion to change venue, p. 5).

### DISCUSSION

The Fraschs argue that this court lacks personal jurisdiction over them, and venue is improper here, because they were fraud-

---

**1.** National Union actually issued the bond on February 4, 1985. On March 15, 1985 National Union issued an endorsement to the Bond, guaranteeing payment of the Fraschs' notes.

ulently induced into signing the indemnity agreement. They also claim that SOPA, Charterhouse, the Bank, Trujillo, and Blitstein are indispensable parties to this action.

### 1. Personal jurisdiction

■ Jurisdiction by consent satisfies constitutional requirements of due process, *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964), and will be enforced unless it would be unreasonable or unjust to do so. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528 (1985). A clause consenting to a given jurisdiction will be invalidated only if it was the product of fraud or overreaching, or if the agreed forum is so inconvenient as to deprive the litigant of his day in court. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18, 92 S.Ct. 1907, 1917, 32 L.Ed.2d 513 (1972); *Bense v. Interstate Battery System of America, Inc.*, 683 F.2d 718, 721–22 (2d Cir.1982). Failure to negotiate or explain the terms of an agreement does not constitute such fraud, overreaching or unconscionability as to void such a clause. *Richardson Greenshields Securities, Inc. v. Metz*, 566 F.Supp. 131, 133 (S.D.N.Y.1983).

■ The Fraschs claim that the forum selection clause was the product of fraud. They state that Trujillo and Blitstein had them sign the indemnity agreement, and later filled it out on their behalf, without informing them that they were applying for a bond to guarantee their credit. Presumably, Trujillo and Blitstein also did not inform them that the indemnity agreement contained a forum selection clause.

The Fraschs, however, do not allege that they were prevented by National Union, Trujillo or Blitstein from reading the indemnity agreement they signed. Thus, even assuming that Trujillo and Blitstein did not inform them that they were signing an indemnity agreement, they could have discovered the forum selection clause by simply reading the agreement. *See National Union v. Hubl*, 87 Civ. 8841, slip op. at 6, 1988 WL 108437 (S.D.N.Y. Oct. 4, 1988).

Accordingly, defendants have failed to establish that their consent to jurisdiction in the indemnity agreement was procured by fraud. Thus, their consent is valid and enforceable, and this court has personal jurisdiction over them.

### 2. Venue

The federal venue statute provides that in a diversity action, venue lies "in the judicial district where all plaintiffs or defendants reside, or in which the claim arose." 28 U.S.C. § 1391(a). Although the Fraschs reside in Colorado and "[a] corporate *plaintiff* is for venue purposes a resident only in the state in which it is incorporated," *Rosenfeld v. S.F.C. Corp.*, 702 F.2d 282, 283 (1st Cir.1983) (emphasis in original), "individuals are free to regulate their purely private disputes by means of contractual choice of forum." *Red Bull Associates v. Best Western International, Inc.*, 862 F.2d 963, 967 (2d Cir.1988).

■ Having consented to jurisdiction in this court, the Fraschs have also consented to venue here. *See* 15 Wright & Miller 2d, *Federal Practice & Procedure*, § 3803.1, p. 17 (to the extent forum selection clauses are enforced, they control the place of suit).

Accordingly, venue is proper here.

### 3. Transfer

■ Since venue is proper here, the Fraschs' motion to transfer is governed by 28 U.S.C. § 1404(a).[2] That section provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The threshold question is whether the action could have been brought in the transferee forum in the first place. *Schutte v. Armco Steel Corp.*, 431 F.2d 22

---

**2.** 28 U.S.C. § 1406(a) allows for transfer of cases where venue is improper in the transferor court.

(3d Cir.), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1970). The Fraschs are Colorado residents. National Union sues for over $10,000.[3] Thus, since citizenship is diverse, there is federal subject matter jurisdiction, 28 U.S.C. § 1332, and venue in the District of Colorado where the Fraschs reside would be proper under 28 U.S.C. § 1393(a).

The note did not establish New York as the exclusive forum for litigation, but rather as a permissible forum, leaving the action subject to transfer. *Credit Alliance Corp. v. Crook,* 567 F.Supp. 1462, 1464–65 (S.D.N.Y.1983); *Coface v. Optique Du Monde, Ltd.,* 521 F.Supp. 500, 507 (S.D.N.Y.1980).

As movants, the Fraschs bear the burden of establishing the propriety of transferring this case. *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). The pertinent factors to be considered in determining whether transfer is proper include

> (1) the convenience of the parties; (2) the convenience of material witnesses; (3) the availability of process to compel the presence of unwilling witnesses; (4) the cost of obtaining willing witnesses; (5) the relative access to sources of proof; (6) where the events at issue took place; (7) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (8) the interests of justice in general.

*Cain v. New York State Board of Elections,* 630 F.Supp. 221, 226 (E.D.N.Y.1986); *see also Schneider v. Sears,* 265 F.Supp. 257, 263 (S.D.N.Y.1967).

■ Here, the Fraschs intend to assert the defense that National Union is responsible for the acts of its alleged agents, Trujillo and Blitstein, who they claim fraudulently induced them into investing in the limited partnership.

National Union responds that Trujillo's and Blitstein's testimony is immaterial to establish this defense, since neither "can provide competent testimony on the question of the alleged agency relationship." (Memo in opposition, p. 16). However, "[a] person can properly testify as to the facts which it is alleged constitute his authority, and his testimony can be introduced either by or against the alleged principal." *RESTATEMENT (SECOND) OF AGENCY* § 285 comment a (1957). Thus, Trujillo's and Blitstein's testimony would be material to the Fraschs' defense.

Since Trujillo and Blitstein are Colorado residents, and there is no indication that they would voluntarily attend a trial in New York or are within this court's subpoena power, this factor weights heavily in favor of transfer. *See Houk v. Kimberly–Clark Corp.,* 613 F.Supp. 923, 928 (W.D.Mo.1985), citing *Cambridge Filter Corp. v. International Filter Co.,* 548 F.Supp. 1308, 1311 (D.Nev.1982); *American Standard, Inc. v. Bendix Corp.,* 487 F.Supp. 254, 262 (W.D.Mo.1980) ("The convenience of witnesses is said to be a primary, if not the most important, factor in passing on a motion to transfer under § 1404(a).")

The Fraschs argue that the financial status of the parties weighs in favor of transfer to Colorado:

> The plaintiff ... is a huge property and casualty insurer with hundreds of millions of dollars in assets. Plaintiff transacts business in all fifty states and has agents who sell its products in the State of Colorado. Plaintiff is able to withstand whatever burden may exist in the transfer of venue to the United States District Court for the District of Colorado. Dwayne Frasch, on the other hand, is an unemployed ironworker with few assets and no financial ability to litigate the underlying fraudulent transaction in the New York courts.[4]

> (Defendants' memo in support of motion to change venue, p. 5)

---

**3.** At the time this action was removed, 28 U.S.C. § 1332 required that the matter in controversy exceed the sum of $10,000. Section 1332 has since been amended to require the matter in controversy to exceed the sum of $50,000.

**4.** Bobbie Frasch is a part-time office worker.

This factor also weighs in favor of transfer. As stated by the court in *Aamco Automatic Transmissions, Inc. v. Bosemer*, 374 F.Supp. 754, 757 (E.D.Pa.1974),

[I]n the interests of justice the ... financial status of the parties must also be considered. *See Aamco Automatic Transmissions v. Dyer*, C.A. 72–1377 (E.D.Pa.1974). A transfer to the Central District of California, where this action could have been instituted, would enable [defendant] to properly prepare and effectively present his defense which he would otherwise be unable to do if the action remained in this forum. As so well stated by the Honorable John Fullam in Aamco v. Dyer, supra, "insistence upon trial in this District would be likely to have the effect of precluding the defendant from effectively asserting a defense."

The Fraschs also argue that their suit in Colorado state court weighs in favor of transfer. They state

[t]he action already filed by defendants above in the District Court, Larimer County, State of Colorado [Case No. 88–Cv–697] involves substantially the same questions that would have to be litigated in the present court if defendants' motion to transfer venue were denied. Defendants are in the process of filing a motion to join National Union Fire Insurance Company as an indispensable party pursuant to Rule 19(a) of the Colorado Rules of Civil Procedure as a result of the actions taken by National Union. The interests of justice require that all matters in dispute be consolidated into one action in a forum that has some nexus or proximity to the location where the cause of action arose. National Union can fully litigate its claims, either in Larimer County District Court for the State of Colorado as a result of having been joined as an indispensable party in that action, or in the United States District Court for the District of Colorado, without incurring the hardships and burdens that defendants in this action would incur if all matters had to be litigated again in the United States District Court for the Southern District of New York.

(Defendants' memo in support of motion to change venue, p. 5)

In *Comptroller of Currency v. Calhoun First National Bank*, 626 F.Supp. 137 (D.D.C.1985), the Comptroller of the Currency investigated a bank and its chairman for possible violations of the Securities Exchange Act of 1934, and ultimately brought suit to enjoin them from committing any further violations. Defendants moved to transfer the action to the Northern District of Georgia, arguing that the presence of several related actions arising out of the same investigation weighed in favor of transfer. In granting the defendants' motion, the court stated

[t]o be sure, as the Comptroller asserts, some of these actions, or all of them, involve legal issues different from those underlying the lawsuit before this Court. However, all of these actions clearly have the same factual underpinning as this case since they all arise from the same Comptroller investigation. While a transfer of this case would not be likely to result in the consolidation of this action with the others, at a minimum such a transfer could facilitate the coordination of pretrial discovery. Additionally, since the same witnesses and documents will probably be important to all actions, it would save the time and energies of the witnesses, the parties, and the attorneys to have all the actions litigated in the same geographical area. By contrast, it would probably result in a waste of judicial and other resources to litigate one case arising out of these facts in the District of Columbia and all the others in Georgia.

*Id.* at 141 (footnote omitted).

Here, this action cannot be consolidated with the Fraschs' lawsuit in Colorado state court. However, both suits arise out of the Fraschs' investment in SOPA. Thus, as in *Comptroller of the Currency, supra,* transfer may result in coordination of pretrial discovery, be more convenient to the witnesses, the parties, and their attorneys, and save judicial resources. Accordingly, the presence of a related action in Colorado state court weighs in favor of transfer.

National Union argues that the action should not be transferred because (1) the forum selection clause in the indemnification agreement should be enforced, (2) its underwriting and claims departments and files relative to this litigation are in New York, Affidavit of Irving V. Goldstein, sworn to June 2, 1989, ¶ 9, (3) most of the witnesses it would call are located in New York, *id.* at ¶¶ 7–8, and (4) most of the events that gave rise to National Union's claim occurred in New York.

National Union has identified Irving V. Goldstein, manager of its financial risk division, who would testify about "National Union's general underwriting procedures for the issuance of bonds ... [and] National Union's procedures followed for the issuance of the Bond underlying this litigation", *id.* at ¶ 7, and Raymond DeCarlo, an employee in its Financial Services Claims Department, who would testify that "National Union has made payments on behalf of defendants and has not been reimbursed." *Id.* at 8. While these employees are beyond the jurisdiction of the Colorado courts, there is no indication that they would not willingly testify at trial in Colorado.

Ordinarily the plaintiff's choice of forum is entitled to considerable weight, and, absent a clear and convincing showing that the balance of convenience favors a transfer, plaintiff's choice should prevail. *Ayers v. Arabian American Oil Co.,* 571 F.Supp. 707, 709 (S.D.N.Y.1983). However, that choice is given less weight where the case's operative facts have little or no connection with the transferor forum. *See Uddyback v. New Jersey Transit Rail Operations,* 629 F.Supp. 1173, 1174 (S.D.N.Y.1986); *Mobile Video Services, Ltd. v. National Assn. of Broadcast Employees and Technicians, AFL–CIO,* 574 F.Supp. 668, 671 (S.D.N.Y. 1983); *Troyer v. Karcagi,* 488 F.Supp. 1200, 1207 (S.D.N.Y.1980); *Essex Crane Rental Corp. v. Vic Kirsch Construction Co.,* 486 F.Supp. 529, 537 (S.D.N.Y.1980).

The significant facts in this suit indicate that a transfer to the District Court of Colorado is warranted. The documents were executed in Colorado, and the alleged fraudulent acts occurred there. There is no question that National Union's relevant documents can be produced in Colorado, and that their witnesses would be willing to testify there. The principal actors are the defendants Dwayne and Bobbie Frasch and the sales agents who sold them the limited partnership, Trujillo and Blitstein. The Fraschs reside in Colorado, and they would not be able to defend effectively this suit in New York. Moreover, there is no indication that the sales agents would voluntarily attend a trial in New York or are within this court's subpoena power. The testimony of the sales agents appears to be essential because they have actual knowledge of the events surrounding the execution of the partnership documents. Finally, transferring this action to Colorado, where the Fraschs have commenced a lawsuit arising out of the same facts involved here, may result in coordination of pretrial discovery, be more convenient to the witnesses, the parties, and their attorneys, and save judicial resources. Thus, Colorado is the more appropriate forum for this suit.

Plaintiff should be prepared to litigate wherever it transacts business. While National Union's main office is in New York, it does business in many states, including Colorado. As a result, it "should expect that the use of a permissive forum selection clause may result in distant litigation where—as here—the opposing parties would be greatly inconvenienced by litigation in New York." *Leasing Service Corp. v. Rigdon,* No. 85 Civ. 1718, slip op. at 7, 1987 WL 4713 (S.D.N.Y. January 15, 1987); *Leasing Service Corp. v. Patterson Enterprises, Ltd.,* 633 F.Supp. 282, 285 (S.D.N.Y. 1986).

In upholding dismissal on grounds of *forum non conveniens,* the Court of Appeals for the District of Columbia Circuit enunciated the principle that "courts may validly protect their dockets from cases which arise within their jurisdiction, but which lack significant connection to it; courts may legitimately encourage trial of controversies in the localities in which they arise." *Pain v. United Technologies Corp.,* 637 F.2d 775, 791 (D.C.Cir.1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980,

**1082**

71 L.Ed.2d 116 (1981), citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The principle is sound, and is applicable here. The determinative factors in this case favor transfer of this suit to Colorado and the interests of judicial economy and justice will not be served by retaining this action in New York.

## CONCLUSION

Defendants' motion to transfer this action to the District of Colorado under 28 U.S.C. § 1404(a) is granted. Resolution of defendants' motion to dismiss for failure to name indispensable parties is left to the transferee court.