SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

ERNST & YOUNG, Defendant.

Civ. A. No. 91–1443.

United States District Court,
District of Columbia.

Oct. 9, 1991.

Susan Ferris Wyderko, William H.
Kuehnle, John M. Gannon, Washington,
D.C., for S.E.C.

Francis J. O'Toole, Harvey L. Pitt, James
H. Schropp, David B. Hardison, Robert J.
Conlan, Fried, Frank, Harris, Shriver &
Jacobson, Washington, D.C., for Ernst &
Young.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This case comes before the Court upon
the defendant's motion to dismiss for im-
proper venue or, alternatively, to transfer
to the Northern District of Texas.

### I. Background

The Securities and Exchange Commis-
sion ("SEC") brought this civil enforcement
action against Ernst & Young ("E & Y")
seeking a permanent injunction that would
prohibit alleged future violations by E & Y
of the Securities and Exchange Act of 1934
and SEC Rules promulgated pursuant to
that statute. E & Y moves that this action
be dismissed because venue is not proper in
the District of Columbia under Rule
12(b)(3) of the Federal Rules of Civil Proce-
dure, or, alternatively, that this Court use
its discretion pursuant to 28 U.S.C.
§ 1404(a) to transfer this action to the
Northern District of Texas.

E & Y is the nation's largest public ac-
counting firm, a general partnership of cer-
tified public accountants with over 2,000
partners nationwide. E & Y, which has its
headquarters in New York City, has offices
in more than 130 cities throughout the
country; it has two offices in the District

of Columbia. This suit is based on actions of one of E & Y's predecessor partnerships, Arthur Young. E & Y resulted from the merger of Arthur Young and a second firm, Ernst & Whinney.[1]

Federal securities law requires certain corporations to file financial reports and proxy statements with the SEC in Washington, D.C. The filings must be signed by a certified public accounting firm attesting that the firm has performed certain procedures in accordance with SEC Rules and that, based on the results of their analysis, the accounting firm is of the opinion that the filings have been prepared in accordance with standard rules of accounting and accurately represent the corporation's financial status. The SEC Rules require that the accounting firm be "independent" of the corporation making the filing.

The SEC alleges that "from 1983 through at least 1990" E & Y aided and abetted repeated violations of federal securities laws [2] in conjunction with audits performed by the Dallas, Texas office of E & Y. *Plaintiff SEC's Memorandum in Opposition to Defendant E & Y's Motion to Dismiss for Improper Venue, or Alternatively, to Transfer* at 4. The audits were of two Texas-based companies, Republic-Bank Corporation ("Republic") and Cullum Companies, Inc. ("Cullum"), a supermarket retailer. E & Y signed audit opinions for inclusion in SEC filings for both companies certifying, amongst other things, that E & Y was "independent" of those companies. The SEC alleges that the filings for both companies were "materially false and misleading" in that E & Y was not "independent" of Republic due to over $20 million in loans made by Republic to E & Y partners and in that E & Y was not "independent" of Cullum because Cullum leased property from two partnerships in which more than 50 E & Y partners participated. *Id.* at 5–6.

E & Y argues that venue is improper in the District of Columbia because the dispute has "absolutely no legally or practically significant connection to the District of Columbia." *Defendant's Motion to Dismiss for Improper Venue or, Alternatively, to Transfer* at 2. In the alternative, E & Y argues that the case should be transferred to the Northern District of Texas, "the factual center of gravity in this lawsuit." *Id.* at 3.

## II. Motion to Dismiss for Improper Venue

■ E & Y moves this Court to dismiss, based on the SEC's failure to plead venue adequately. For the reasons set forth below, the Court denies this motion. The plaintiff need not plead venue; rather, lack of venue is an affirmative defense. Further, the Court finds that E & Y cannot successfully assert lack of venue in this case. The SEC's pleadings establish that venue is appropriate in the District of Columbia.

Venue need not be alleged in the complaint. *Klepper Krop, Inc. v. Hanford*, 411 F.Supp. 276, 280 (D.Neb.1976); Fed. R.Civ.P. Form 2, advisory comm. note 3. Thus, the SEC's failure to assert venue explicitly in its complaint is not a basis to dismiss this action.

■ Nor can E & Y prevail with an affirmative defense of lack of venue. Section 27 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78aa, is a special venue provision which makes venue appropriate in SEC civil enforcement actions such as this one in any district where an "act or transaction constituting the violation occurred" or in the district "wherein the defendant is found or is an inhabitant or transacts business." While only one of these criterion needs to be met in order for venue to be appropriate, in this case, both criteria are met.

---

**1.** Since E & Y does not dispute that it is responsible for the action of its predecessors, the Court will refer to the actions of E & Y, Arthur Young, and/or Ernst & Whinney collectively as being those of "E & Y."

**2.** Specifically, the SEC alleges that E & Y aided and abetted violations of Sections 13(a) and 14(a) of the Securities and Exchange Act of 1934 (15 U.S.C. §§ 78m(a) and 78n(a)) and Rules 12b–20, 13a–1, 14a–3, and 14a–9 (17 C.F.R. §§ 240.12b–20, 240.13a–1, 240.14a–3, and 240.-14a–9).

The alleged violation is aiding and abetting the filing of "false and misleading" reports with the SEC. E & Y certified its "independence" in the reports at issue with the knowledge and with the intent that they were to be filed in Washington, D.C. "[T]he place where a document is to be filed may be regarded as the place where any asserted non-filing or misfiling occurred" within the meaning of § 78aa. *Securities and Exchange Com'n v. Savoy Industries*, 587 F.2d 1149, 1155 (D.C.Cir. 1978), *cert. denied*, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979). Thus, the filing of "proxy materials" and "annual reports" in the District of Columbia leads to the conclusion that "venue is properly laid in the District of Columbia." *Comptroller of the Currency v. Calhoun First Nat. Bank*, 626 F.Supp. 137, 139 n. 8 (D.D.C.1985). *See also, Investors Funding Corp. of New York v. Jones*, 495 F.2d 1000, 1003 (D.C.Cir.1974) (venue for civil enforcement action by SEC involving late filing lies where filing was required to be made, *i.e.*, "the locus for the act of late filing.") Contrary to Defendant's assertion otherwise, the act of filing in the District of Columbia constitutes the basis of the wrongdoing alleged in the complaint. The second ground for venue under § 78aa is also present in this action. It is not disputed that E & Y "transacts business" in the District of Columbia. E & Y is a nationwide accounting firm that not only transacts business, but has two offices in the District. Therefore, venue is appropriate in the District of Columbia. Accordingly, Defendant's motion to dismiss is denied.

III. Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

■ The conclusion that venue is appropriate in the District of Columbia does not necessarily lead to the conclusion that there is a "factual nexus between this case and the District of Columbia other than that the filings were made at the office of the [SEC] here." *Calhoun, supra* at 139 n. 8. Defendant has moved for this Court, pursuant to the authority granted the Court by 28 U.S.C. § 1404(a), to transfer this case to the Northern District of Texas.

"It is well recognized that 'exercise of the power to transfer authorized by § 1404(a) is committed to the sound discretion of the district court.'" *Consol. Metal Products v. American Petro. Institute*, 569 F.Supp. 773, 774 (D.D.C.1983) (citation omitted); *Securities and Exch. Com'n v. Page Airways, Inc.*, 464 F.Supp. 461, 463 (D.D.C.1978).

> [While] [s]ection 1404(a) finds its origins in the doctrine of *forum non conveniens*, ... a transfer is available "upon a lesser showing of inconvenience" than that required for a *forum non conveniens* dismissal. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.

*Savoy, supra* at 1154 (citation omitted).

The Court's discretion under § 1404(a) is not circumscribed by § 78aa. Section 1404(a) "applies to actions governed by special venue provisions, including the special venue provisions of the federal securities statutes." *Savoy, supra* at 1153 (citations omitted).

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Thus, as a prerequisite to § 1404(a) analysis, the action at issue must be one that could appropriately have been brought in the requested transferee forum.

That prerequisite is certainly met in this case. This suit arises under federal law; the Northern District of Texas, as well as this Court, has subject matter jurisdiction. In addition, the Defendant would be subject to service of process in Dallas. Finally, venue is also appropriate in the Northern District of Texas. As evident from the facts underlying this action, E & Y clearly "transacts business" in the Northern District of Texas within the meaning of § 78aa.

Having determined that the action could have been brought in the proposed transferee forum, the Court "must take into

account the interests in conserving judicial resources, the convenience of the parties and witnesses, access to sources of proof, and practical considerations in facilitating a final resolution of the litigation in an expeditious and inexpensive manner." *Air Line Pilots Ass'n v. Eastern Air Lines,* 672 F.Supp. 525, 526 (D.D.C.1987). In summary, what is required is a "factually analytical ... determination of convenience and fairness." *Savoy* at 1154.

Defendant strenuously argues that convenience both of the parties and of non-party witnesses militates in favor of transfer. The underlying facts in this case surrounding the audits of Republic and Cullum, the loans made to E & Y partners by Republic, Republic's normal lending procedures, the collateral supporting those loans, the property leased by Cullum, and the partnerships in which Cullum and E & Y partners participated are almost exclusively based in Texas. Outside of the filings themselves, no underlying operative facts arose in the District of Columbia. The majority of the E & Y partners who might be called as witnesses at trial, the Republic personnel who might be called as witnesses, and the Cullum personnel reside in Texas. E & Y also asserts that trial in the District of Columbia would result in a significant disruption to the operations of the Dallas office of E & Y. Finally, E & Y notes that the SEC has a field office in Fort Worth, which mitigates any inconvenience that the SEC might experience should the case be transferred to Dallas.

The SEC responds by arguing that E & Y overstates the inconvenience of litigation in the District of Columbia. Since E & Y is a large, national firm, the SEC argues that the inconvenience to the firm and its partners of litigation in Washington is minimal. The SEC notes that while the underlying facts may lie primarily in Texas, the trial will likely revolve mainly around expert testimony, with many of the facts being stipulated. The experts would be drawn on a national basis, with no particular concentration from Texas. Further, the SEC argues that since it has already subpoenaed a significant number of documents to the Washington office of the SEC, that the

underlying events initially occurred in Texas is irrelevant and that it would be inconvenient to have to move these documents from the District of Columbia to Texas. In fact, E & Y's outside counsel are located in D.C., thus making it more, not less, convenient for Defendant if the suit were to remain in Washington.

The SEC states that, on the other hand, its personnel are currently working on matters other than this enforcement action and thus it would be inconvenient for the SEC to have to relocate its personnel in Dallas for the duration of what has the potential to be a long and complex trial. Nor does the SEC field office in Fort Worth have the resources to support this type of litigation. Thus, the SEC concludes, E & Y has not met its burden of demonstrating sufficient net inconvenience to overcome the weight that should be given to the plaintiff's choice of forum. *Savoy, supra* at 1154–55 ("There can be no doubt that a plaintiff's choice of forum is entitled to at least some weight.")

E & Y has appeared to have overstated somewhat the disruption to its business that trial in Washington would entail. While it would be necessary for E & Y partners to travel to Washington to testify, there would be no need for them to remain here for the duration of the trial; the partners are not individual defendants in this suit. *Contra Page Airways, supra* at 463 (granting transfer where "the individual defendants in this action represent a large part of Page's senior management"; and therefore, "Page's business would be substantially disrupted by having litigation proceed in an inconvenient forum.").

However, far more of the potential witnesses are from Texas than from D.C. In fact, the SEC has offered the name of only one potential witness who resides in the D.C. area, a person who coincidentally moved here after the underlying events occurred. Thus, while neither party has demonstrated that there are any witnesses who could not be produced in either forum, it would appear that for the majority of witnesses, trial in Texas would be less burdensome than trial here.

Like the enforcing agency in *Calhoun, supra,* the SEC does not dispute the location of the underlying events or the residence of the majority of the fact witnesses, but "contends that convenience should carry little weight here because this case will be a largely documentary one and will require a minimum of live [factual] testimony." *Id.* at 140. As the Court did in *Calhoun,* this Court has trouble accepting the assertion that few issues of fact will need to be aired at trial. Issues such as "whether the bank made improper inside loans [or here, improper loans to purportedly 'independent' parties,] may turn out to be fiercely contested on the facts." *Id.* at 141. E & Y asserts that it will vigorously contest such factual issues in this case. Therefore, "the testimony of the individuals involved on both sides of the various transactions will clearly be important." *Id.* These individuals are primarily from Texas.

Unlike the inconvenience to both party and non-party witnesses, the existence of the Fort Worth office of the SEC has little relevance to the § 1404(a) analysis in this case and does not bolster Defendant's argument. As to the relevance of the field office, this case must be distinguished from *Calhoun,* where the enforcing agency had conducted the investigation from its field office in the requested transferee forum. The investigation in this case was conducted from the Washington office. The Court has no reason to doubt the SEC's representation that the Fort Worth office does not have the resources to provide assistance in this matter. "[T]he Commission [has] alleged that transfer would be inconvenient for it (as opposed merely to being inconvenient for its attorneys), as the other activities of the attorneys involved would be hindered. The mere existence of a Commission field office near Dallas has not been demonstrated to be a compelling factor...." *Savoy, supra* at 1155–56.

While the existence of the Fort Worth field office does not support a decision to transfer, neither has the SEC demonstrated that if the case were transferred that the SEC would suffer any significant burden. While the SEC asserts, and it no doubt is accurate, that SEC personnel have other on-going responsibilities, those other duties did not prevent the SEC in this case from conducting a fourteen-month investigation, centered in Texas, from the SEC's Washington office.

It is true that some documents would now need to be moved if the case were to be tried in Dallas. There has been no showing, however, that such documents are extraordinarily voluminous or immobile. The mere presence of certain documents in Washington does not change the location of the facts underlying this action. Further, the sole reason those documents are currently in Washington is that the SEC subpoenaed them to its D.C. office. The SEC may not use its subpoena power to transport documents from the forum where they were created, and/or where the events underlying them occurred, to an otherwise inconvenient forum and then argue that by doing so it has transformed that otherwise inconvenient forum into one where suit can be sustained, insulated from transfer.

The SEC regularly investigates and tries cases all over the country. The reasons asserted by the SEC at oral argument for not wanting trial in this case to occur outside of Washington, D.C. relate to minor litigational inconveniences seemingly present in any enforcement action brought in a city other than the one where the agency is located. In other words, the concerns raised seem to relate far more to the convenience of SEC attorneys than to the SEC itself.

If such relatively minor concerns were able to defeat a motion to transfer, then every enforcement action, regardless of where the underlying events took place, would be entertained in this District simply because the agency is located here. This Court would be inundated. More importantly, every organization across the country that is required to file documents with an agency in Washington could be forced to travel here to defend against as yet unproven charges. It is because such a result is undesirable that a greater showing of inconvenience than the SEC has made in this case is needed to countervail

the inconvenience of requiring a party to defend its actions in a forum far from where those actions took place and requiring non-party witnesses to travel far from their place of residence.

Nor does the SEC's observation that Defendant has retained counsel who are located in Washington have any role in the § 1404(a) analysis. Defendants are obviously free to obtain the counsel of their choosing. While it might be somewhat more "convenient" for Defendant's counsel if the case remains in Washington, or even somewhat more economical for Defendant, this is a "convenience" that Defendant has willingly foregone. Such decisions are for Defendant and their chosen counsel to make and are not appropriate considerations in the Court's analysis.

In summary, the Court concludes that the relevant considerations relating to location of evidence, convenience to witnesses and net convenience to the parties weigh in favor of transfer. Having addressed convenience to the parties and to the witnesses and access to evidence, the interests of conserving judicial resources and reaching an expeditious resolution to this matter remain to be discussed.

E & Y argues that related cases have already been filed in the Northern District of Texas and that judicial economy would be served by a transfer of this case to that jurisdiction. The SEC, on the other hand, argues that any other actions, while related, revolve around different factual issues and would not be consolidated with this case even if it were to be transferred. Therefore, little judicial economy could be realized from such a transfer. Further, what little economy might be achieved would be counterbalanced by that lost since discovery in this matter has already commenced here.

The Court finds merit in the arguments of both parties on the issue of judicial economy. It is possible that the transferee court would be able to develop some expertise in the underlying facts of any related actions pending with that court. For example, there is an action currently pending in the Northern District of Texas alleging negligence by E & Y in its audit of Republic. *In re First RepublicBank Securities Litigation*, CA3–88–0641–H (N.D.Tex.), filed December 28, 1988 (class action by Republic stockholders). The issue of E & Y's "independence" will likely arise in that action. However, that action also raises many issues not raised at all here and is unlikely to focus on E & Y's alleged wrongdoing.

The opportunity for judicial economy is minimized further by the fact that this action would not be consolidated with any actions pending in the Northern District of Texas. *See Securities and Exchange Com'n v. Hart*, No. 78–65 (D.D.C. May 26, 1978) (available on LEXIS) (pendency of similar actions in another jurisdiction did not justify transfer where it was readily apparent that SEC would refuse to allow consolidation with other actions even if case were transferred). In fact, not only is consolidation unlikely, but there is no assurance that this matter, if transferred, would appear before a judge who is also presiding over any given related case. Thus, while the efficient resolution of this and related matters might nominally be assisted by a transfer, the realization of even modest economy is by no means certain.

## IV. Conclusion

This action could be entertained in either of the contemplated jurisdictions. A transfer to the Northern District of Texas may to some degree further the efficient administration of justice. Far more importantly, however, Texas is the site of nearly all of the facts underlying the filings here. "Despite the presumption in favor of plaintiff's forum choice, that choice should not be allowed to stand where the forum chosen bears virtually no relation to the occurrences giving rise to the cause of action." *Oakley v. Trans World Airlines, Inc.*, 14 Fair Empl.Prac.Cas. 1231, 1232 (D.D.C.1976).

While the filings in Washington constitute the alleged violation and, therefore, support venue here, the underlying occurrences were in Texas. Most of the witness-

es reside there. Having trial in Washington would place a significant burden on the E & Y partners who will be witnesses, if not on E & Y itself. Even more significant is that trial here would also place a burden on witnesses not affiliated with either party. The Court finds no reason to disregard the inconvenience to these witnesses.

Based on the foregoing analysis, the Court, pursuant to its discretion under 28 U.S.C. § 1404(a), grants Defendant's motion to transfer this action to the Northern District of Texas.