**VULCAN IRON WORKS, INC., S & S Machinery Co. and Vulcan Machine Tools, Inc., Plaintiffs,**

v.

**POLISH AMERICAN MACHINERY CORPORATION, Stanislauw Trzeciak, Stefan Mysliwiec, Metalexport, Aleksander Jung, Andrzej Diszy, Misczvskaw Nitefor, Wladyslaw Biela, Oswald Jeremias, Dalimpex Ltd., Defendants.**

No. M8–85.

United States District Court, S. D. New York.

June 27, 1979.

Fox, Glynn & Melamed, New York City, for plaintiffs; John R. Horan, Kathleen M. Kundar, New York City, of counsel.

Conboy, Hewitt, O'Brien & Boardman, New York City, for the Embassy of the Polish People's Republic and Inowolski and Golab; Aaron N. Wise, Timothy C. Quinn, Jr., New York City, of counsel.

LASKER, District Judge.

In connection with litigation pending in the United States District Court for the District of New Jersey, the plaintiffs in that action served deposition subpoenas on the Commercial Attache and Vice Commercial Attache of the Polish Commercial Counselor's Office in New York City, Anatoliusz Inowolski and Woadyslaw Golab, who are not parties to the New Jersey action. Inowolski and Golab did not appear for the depositions noticed in the subpoenas, and the plaintiffs move for an order finding them in contempt of court for failing to obey the subpoenas "without adequate excuse." Fed.R.Civ.P. 45(f). Inowolski and Golab assert that their failure to appear is excused because they enjoy diplomatic immunity from the jurisdiction and compulsory process of this court.

The immunity of representatives of foreign nations (and their staffs and households) from criminal and civil jurisdiction has long been a precept of international law. In the United States this precept is embodied in the Vienna Convention on Diplomatic Relations [1] and the Diplomatic Relations Act,[2] which extends to diplomatic representatives of non-signatories to the Vienna Convention the immunities specified in the Convention, and in various bilateral agreements, including the Consular Convention between the United States and the Polish People's Republic (Polish Consular Convention).[3]

■ The provisions of the Vienna Convention and the Polish Consular Convention respecting immunity differ. Thus the initial question here is which of the two applies in the circumstances of this case. The Vienna Convention delimits the immunity of heads of "diplomatic missions," their families, staff, and servants, whereas the Consular Convention does so for officers and employees of "consular establishments." The issue, then, is what is the status of the Polish Commercial Counselor's Office.

The plaintiffs argue that the functions of the Polish Commercial Counselor's Office are consular, and that accordingly it should be deemed a consulate. However, Article 3(2) of the Vienna Convention provides that "[n]othing in the present Convention shall be construed as preventing the performance of consular functions by a diplomatic mission," and Article 4 of the Consular Convention provides that a member of a diplomatic mission assigned to perform consular functions "shall continue to enjoy the privileges and immunities to which he is entitled as a member of the diplomatic mission." While in the absence of any other indications of the status of the Polish Commercial Counselor's Office its function would perforce be dispositive of the question of its status, there is evidence here that it is in fact an arm of the Polish embassy which, consistent with Article 3 of the Vienna Convention, performs consular functions.

First, both the head of the Polish Commercial Counselor's Office and the Minister-Counselor of the Polish Embassy state, in letters to the court, that the Commercial Counselor's Office is a part of the Embassy.[4] Second, their assertions are indirectly supported by a State Department note dated January 30, 1979, which, though it states only that the Commercial Counselor's Office "is a recognized official office of the Polish People's Republic in the United States,"

1. Done at Vienna April 18, 1961, [1972] 23 U.S.T. 3227, T.I.A.S.No. 7502, 500 U.N.T.S. 96, U.N.Doc. A/Conf. 20/13 (entered into force with respect to the United States December 13, 1972).

2. Pub.L.No. 95-393, 92 Stat. 808 (1978) (codified at 22 U.S.C. §§ 254a–254e, 28 U.S.C. §§ 1251, 1351, 1364).

3. Signed at Warsaw May 31, 1972, [1973] 24 U.S.T. 1233, T.I.A.S.No. 7642 (entered into force July 6, 1973).

4. Affidavit of Timothy C. Quinn, Jr., Exhibits B, E.

notes that "[t]he Department has formally extended to the head of that office the status of a diplomatic agent and the privileges and immunities attendant to that status." [5] Article 1(e) of the Vienna Convention defines a "diplomatic agent" as the head of a "diplomatic mission." The term does not appear in the Consular Convention.[6] Finally, the plaintiffs, who bear the ultimate burden of proof on this motion, have not submitted a copy of the exequatur or other official document recognizing the head of the Commercial Counselor's Office as the head of a consular establishment.[7] In the circumstances, we conclude that the Commercial Counselor's Office is an arm of the Polish Embassy, and that the treaty applicable in this case is the Vienna Convention, not the Polish Consular Convention.[8]

Article 31 of the Vienna Convention deals with the immunity of "diplomatic agents." [9] Article 37(2) provides that "[m]embers of the administrative and technical staff of the mission . . . shall . . . enjoy the privileges and immunities specified in Articles 29 to 35, except that the immunity from civil and administrative jurisdiction of the receiving state specified in paragraph 1 of Article 31 shall not extend to acts performed outside the course of their duties." Accordingly, Inowolski and Golab, as members of the "administrative and technical staff" of the Commercial Counselor's Office, are entitled to the protection accorded diplomatic agents by Article 31(2), which provides that "[a] diplomatic agent is not obligated to give evidence as a witness." Thus, their failure to appear for depositions in response

5. *Id.* Exhibit D.

6. The Polish Commercial Counselor's Office appears in the State Department's Diplomatic List dated August, 1978, under the listing for the Polish Embassy. This cannot be considered dispositive of its status in the absence of some representation regarding the Diplomatic List's legal authority.

7. "The head of a consular establishment appointed by the sending State may exercise consular functions after presentation of letters of commission or similar instrument and after the issuance to him of an exequatur or other appropriate document of recognition by the receiving State."
Polish Consular Convention, Article 3(1).

8. Even if the Consular Convention did apply in this case, Inowolski and Golab might well be entitled to immunity. Article 14 of the Polish Consular Convention provides:
"1. Members of a consular establishment may be called upon to attend as witnesses in the course of judicial or administrative proceedings. In the event of the refusal of a consular officer to give evidence at such proceedings, no coercive measure or penalty may be applied to him. An employee of a consular establishment shall not, however, decline to give evidence, except in the cases mentioned in paragraph 3.
. . . . .
"3. Members of a consular establishment are under no obligation to give evidence concerning matters connected with the exercise of their functions or to produce official correspondence or documents related thereto. They are also entitled to decline to give evidence as expert witnesses with regard to the

law of the sending State. These rights shall not be invoked if the interest of justice so requires and the interests of the sending State are not affected."

9. Article 31 provides:
"1. A diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving state. He shall also enjoy immunity from its civil and administrative jurisdiction, except in the case of:
(a) a real action relating to private immovable property situated in the territory of the receiving state, unless he holds it on behalf of the sending state for the purposes' of the mission;
(b) an action relating to succession in which the diplomatic agent is involved as executor, administrator, heir or legatee as a private person and not on behalf of the sending state;
(c) an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving state outside his official functions.
2. A diplomatic agent is not obliged to give evidence as a witness.
3. No measures of execution may be taken in respect of a diplomatic agent except in the cases coming under sub-paragraphs (a), (b) and (c) of paragraph 1 of this article, and provided that the measures concerned can be taken without infringing the inviolability of his person or of his residence.
4. The immunity of a diplomatic agent from the jurisdiction of the receiving state does not exempt him from the jurisdiction of the sending state."
Vienna Convention, Article 31.

to the plaintiffs' subpoenas was excusable, and the plaintiffs' motion for an order of contempt must be denied.

 Plaintiffs request, in the event their motion is denied, that the court certify the question for appeal pursuant to 28 U.S.C § 1292(b). Certification is unnecessary, since the decision on this motion disposes of this entire case (though not of the pending litigation in New Jersey), and therefore is a final order appealable as of right under 28 U.S.C. § 1291.

For the reasons stated, plaintiffs' motion is denied.

It is so ordered.