**Fatimeh Ali AIDI, et al., Plaintiffs,**

**v.**

**Amos YARON, Defendant.**

Civ. A. No. 87–1216.

United States District Court,
District of Columbia.

Aug. 28, 1987.

Linda Huber, Washington, D.C., for plaintiffs.

John T. Boese, Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., for defendant.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON,
District Judge.

Plaintiffs filed this suit against Amos Yaron on May 4, 1987, seeking to recover damages for personal injuries as well as for the wrongful death of certain relatives alleged to have been killed at the Sabra and Shatila refugee camps in Beirut, Lebanon, in September 1982. The defendant, a Brigadier General in the armed forces of the State of Israel, was at that time stationed in West Beirut. Plaintiffs accuse defendant of participating in the massacres which occurred in these refugee camps by knowingly facilitating and permitting the deaths of plaintiffs' decedents.

Defendant, who later became Defense, Military, Naval and Air Attache at the Embassy of Israel in Washington, D.C., and who continues to serve in that capacity, was accorded full diplomatic immunity by the United States on July 21, 1986. *See,* Defendant's Motion to Dismiss, Ex. 1. Despite this proclamation of immunity, plaintiffs contend that defendant is not immune from this suit as his actions in Lebanon regarding the Sabra and Shatila refugee camps constituted international crimes resulting in the dissolution of his diplomatic immunity for purposes of this action. They argue that no immunity should be afforded one who is guilty of international war crimes. Defendant denies that he is guilty of any war crimes and asserts that diplomatic immunity protects him from liability in this action. Accordingly, defendant moves to quash the service of process as well as for dismissal of the action.

As this Court finds that defendant's diplomatic immunity is in tact and deserving of full recognition, the motion to quash service of process will be granted. Accordingly, there is no need to reach the separate motion to dismiss.

## DISCUSSION

### I. MOTION TO QUASH SERVICE

■ Plaintiffs first argue that defendant's motion to quash service of process should be denied as the sole remedy available to defendant is a motion to dismiss. Plaintiffs cite the U.S. Diplomatic Relations Act, 22 U.S.C. § 254d, which states that actions brought against diplomats entitled to immunity should be dismissed. They argue further that the provisions which made service of process on diplomats illegal and void were repealed[1] and thus there is no provision for quashing service of process upon a diplomat entitled to immunity.

While it is true that the Diplomatic Relations Act fails to specify the remedy requested by defendant, it does not specifically prohibit this remedy. Moreover, there is authority, upon which the Court may rely, which indicates that it is proper to quash the service of process upon an immunized diplomat.

### A. *Vienna Convention*

The Diplomatic Relations Act of 1978, 22 U.S.C. §§ 254a *et seq.*, is essentially a codification of the Vienna Convention on Diplomatic Relations of April 18, 1961, T.I.A.S. 7502; 23 U.S.T. 3227. For example, § 254b of the Act states that diplomats "shall enjoy the privileges and immunities specified in the Vienna Convention." As such, we must look to the privileges and immunities provided diplomats in the Vienna Convention to discover if defendant may properly have the service of process quashed.

There are several indications in the Vienna Convention that this remedy is available to defendant. Article 29 of the Convention states that "[t]he person of a diplomatic agent shall be inviolable. He shall not be liable to any form of arrest or detention." Moreover, Article 31(c)(3) states "[n]o measures of execution may be taken in respect of a diplomatic agent ..." Both of these provisions imply that a diplomat who enjoys immunity is also immune to service of process.

### B. *Case Law*

This discrete issue appears to be a case of first impression as there have been no cases since the repeal of §§ 251–253, making service on diplomats illegal, discussing the validity of service of process on immunized diplomats. However, the reasoning employed in several pertinent cases, as well as common sense, moves this Court to grant the motion to quash service. For example, in *Vulcan Iron Works v. Polish Am. Machinery Corp.*, 472 F.Supp. 77, 78 (S.D.N.Y.1979) the Court declared that the Vienna Convention and the Diplomatic Relations Act provided protection from "the jurisdiction and *compulsory process* of this court." (emphasis added).

Indeed, diplomatic immunity provides protection from the exercise of jurisdiction by a federal court over a diplomat. As stated in *United States v. Enger*, 472 F.Supp. 490 (D.N.J.1978), "Diplomatic immunity in its contemporary aspect may be broadly defined as the freedom from local jurisdiction accorded under principles of international law by the receiving state to the duly accredited diplomatic representatives of other states." *Id.* at 504. It is axiomatic that if jurisdiction is not available, then service of process is void, making a motion to quash service of process a valid remedy.

Finally, the court in *Kobelski v. Perm.M. of F.Rep. of Ger. to U.N.*, 54 A.D.2d 867, 388 N.Y.S.2d 595 (1976), declared that if diplomatic immunity is conferred on an individual, "he is entitled to immunity from personal service under the circumstances

1. 22 U.S.C. §§ 252–254 provided that service of process made upon a diplomat was void and that anyone who served such process was guilty of criminal violations. These sections were repealed. Pub.L. 95–393, § 3(a)(1), Sept. 30, 1978, 92 Stat. 808.

herein ..." Plaintiffs correctly point out that this case was decided while the sections declaring service of process on diplomats to be void were still in effect. However, this case does not rely on those sections in holding that service of process cannot be made on those enjoying diplomatic immunity. Instead, this case merely declares the rather obvious point that if a diplomat is immune from suit he or she is equally immune from service of process.

Accordingly, if Mr. Yaron is entitled to diplomatic immunity, he is likewise shielded from service of process. Thus, we turn to the question of his immunity.

## II. IMMUNITY

■ Article 31 of the Vienna Convention, 23 U.S.T. 3227, 3240, T.I.A.S. 7502, provides that a diplomat enjoys immunity from the criminal jurisdiction of the host country as well as its civil jurisdiction subject to three exceptions.[2] Plaintiffs concede that none of these exceptions apply to the defendant. Instead, they maintain that defendant's status as an international war criminal removes the cloak of immunity granted to him, thus exposing him to the jurisdiction of this civil action.

Plaintiffs note that there is no such exception to the shield of diplomatic immunity expressed in either the Diplomatic Relations Act of 1978 or in the Vienna Convention. They maintain, however, that the Vienna Convention and the Diplomatic Relations Act of 1978 merely codify the rules of customary international law on the issues of diplomatic privileges and immunities. These customs in turn, argue plaintiffs, dictate that no one should be shielded from prosecution for the commission of international crimes. Plaintiffs maintain that these customs are illustrated in the Nuremberg Charter, the U.S. Army Field Manual, and the Fourth Geneva Convention of 1949.

Assuming *arguendo* that the Vienna Convention and the Diplomatic Relations Act of 1978 meant to embody these customs of international law, that these customs create additional exceptions to the grant of immunity,[3] and that these customs declare that immunity shall be dissolved in the case of war criminals, defendant would still be entitled to diplomatic immunity as this is not a suit charging Mr. Yaron with international crimes. This is a civil action seeking damages for alleged tortious conduct, wrongful death and personal injury. This is not a criminal tribunal. Without exception, plaintiffs rely on statements which argue for the abrogation of diplomatic immunity when a defendant is before a criminal tribunal charged with com-

**2.** Article 31 states in part:

1. A diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving State. He shall also enjoy immunity from its civil and administrative jurisdiction, except in the case of:

(a) a real action relating to private immovable property situated in the territory of the receiving State, unless he holds it on behalf of the sending State for the purposes of the mission;

(b) an action relating to succession in which the diplomatic agent is involved as executor, administrator, heir or legatee as a private person and not on behalf of the sending State;

(c) an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions.

**3.** This premise in and of itself is troubling. The Court doubts that an additional exception to diplomatic immunity would be created in such a manner.

Using the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330, et seq., (hereinafter "FSIA") by analogy, the Court notes that the FSIA explicitly provides that foreign sovereign immunity is subject to international agreements to which the United States was a party at the time of its enactment. Even with the explicit language creating an exception to immunity, several courts have noted that these international agreements must, to create a waiver, directly conflict with the terms of the FSIA. *See Mashayekhi v. Iran,* 515 F.Supp. 41 (D.C.D.C.1981) (citing H.R.Rep. No. 94–1487 at 17–18 *reprinted in* [1976] U.S. Code Cong. & Admin.News 6604, 6616).

In the instant case, there is no exception to the immunity created by Article 31 of the Vienna Convention referring to international agreements, and even if there were, the language of these agreements would probably have to be in direct conflict with the language of Article 31 before a court could deem them to be an exception to diplomatic immunity. Such is not the case herein.

mitting international crimes.[4] This is not such a tribunal.

Accordingly, this Court can see no reason to dissolve the diplomatic immunity granted Mr. Yaron and for the reasons stated above grants the motion to quash service of process.

---

**4.** For example, on page seven of their Reply Memorandum of Points and Authorities, plaintiffs quote the "Judgment of the International Military Tribunal" as stating: "The principle of international law which ... protects the representatives of a state, cannot be applied to acts which are condemned as *criminal* by international law" (emphasis added).

Moreover, Professor Paust is quoted on page eleven of this same brief as stating that "Diplomatic Agent[s] *charged with the commission of an international crime*" are not entitled to immunity (emphasis added).