Terry Lynn NICHOLS, Plaintiff,

v.

UNITED STATES BUREAU OF PRISONS, United States Marshals Service, and Janet Reno, Attorney General for the United States, Defendants.

Civ. A. No. 95–1599 (JHG).

United States District Court, District of Columbia.

Aug. 23, 1995.

Warren Gary Kohlman, Bredhoff & Kaiser, Washington, DC, for plaintiff.

John Michael Facciola, U.S. Attorney's Office, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This case was brought on August 21, 1995, as a Motion for Temporary Restraining Order.[1]  A hearing was scheduled on that motion for Thursday, August 24, 1995.  Also on August 21, 1995, defendants moved to transfer the case to the United States District Court for the Western District of Oklahoma. That motion was the subject of a hearing

1. This Court is handling the case, formally assigned to Judge Norma Holloway Johnson, in its capacity as Motions Judge.

held this date. For the reasons expressed below, the defendants' motion to transfer is granted and this case shall be transferred to the United States District Court for the Western District of Oklahoma.[2]

## I. Background

Plaintiff, Terry Lynn Nichols, a defendant indicted in the Oklahoma City bombing, is incarcerated at the Federal Correctional Institute at El Reno, Oklahoma. In his motion for a Temporary Restraining Order, Mr. Nichols seeks an order enjoining the defendants, the United States Bureau of Prisons, the United States Marshals Service, and Attorney General Janet Reno (hereinafter "defendants" or "the government"), from preventing a contact visit at El Reno with his wife, Marife Nichols. Mrs. Nichols has resident alien status in the United States but has voluntarily moved herself and her child to the Philippines, where she is building a house.

Mrs. Nichols is in the United States pursuant to an order recently issued at the request of Mr. Nichols by Chief Judge David Russell of the United States District Court for the Western District of Oklahoma. Under that order, court funds were authorized to transport Mrs. Nichols and her two-year old daughter from their home in the Philippines to Oklahoma City for the purpose of consulting with Terry Nichols' attorneys in the criminal proceeding in Oklahoma City. Chief Judge Russell also authorized seven nights' accommodation in a hotel for Mrs. Nichols and her daughter, which initially were scheduled to expire today. Mr. Nichols, through counsel, was able to arrange for an extension of that date, and Mrs. Nichols is now scheduled to remain in the United States until this Sunday. There is no *legal* prohibition against her remaining in the United States for as long as she wishes. Counsel for Mr. Nichols contend it is Mrs. Nichols' pregnancy (now six months in duration), her emotional state, and financial concerns that motivate her desire to return to the Philippines.

Lawyers for Mr. Nichols recently requested a contact visit between Terry Nichols, Marife Nichols, their daughter, and Mr. Nichols' attorneys, during Mrs. Nichols' stay in the United States. Their request for a contact visit was refused by the warden of El Reno, but according to the declaration of one of Terry Nichols' attorneys, Kate Rubin, the warden was willing to allow a noncontact visit on the weekend.[3] Decl. of Kate Rubin at 7. However, Nichols' attorneys maintain that a *contact* visit, without a glass partition dividing Mr. and Mrs. Nichols, is necessary to enable the defense team to have an unrestrained conversation about certain matters important to Mr. Nichols' defense. Mr. Nichols' attorneys contend that Mrs. Nichols is not planning to return to the United States until the time of trial, many months distant, due to her advancing pregnancy. As such, Mr. Nichols, through counsel, asserts that this is his last opportunity to meet with his wife prior to trial.

Mr. Nichols contends that his constitutional right to effective assistance of counsel is being violated and irreparably harmed by the warden's refusal to allow this contact visit with his wife. Nichols further argues that the defendants' actions in refusing to allow him to see his pregnant wife and their two-year-old daughter is causing him "grave emotional distress."

The foregoing background of the underlying motion for a temporary restraining order is detailed in order to provide the context for the instant motion to transfer the case to the United States District Court for the Western District of Oklahoma.

## II. Analysis

Defendants have moved pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Western District of Oklahoma. Section 1404(a) states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any

---

2. In light of this decision on the government's motion to transfer, that hearing will not take place, in that this case, including the pending motion for a Temporary Restraining Order, are being transferred to the United States District Court for the Western District of Oklahoma.

3. That visit may have occurred by now; Mr. Nichols has not, to the Court's knowledge, requested or been granted a second noncontact visit with Mrs. Nichols.

other district or division where it might have been brought.

28 U.S.C. § 1404(a).

■ Section 1404(a) places "discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). A motion to transfer pursuant to § 1404, therefore, requires a district court to "balance a number of case-specific factors." *Id.* The relevant factors typically considered in evaluating a motion to transfer include: (1) a plaintiff's privilege of choosing the forum; (2) convenience of the parties; (3) location of counsel; (4) convenience of witnesses, including expert witnesses, and, in this instance, possibly including the plaintiff prisoner; (5) the location of books and records; (6) the speed with which the underlying civil case may be resolved by the relevant courts; and (7) the interest of justice. 15 Charles A. Wright, *et al.*, *Federal Practice and Procedure* §§ 3848–54 (2d ed. 1986); *Starnes v. McGuire*, 512 F.2d 918 (D.C.Cir.1974).

■ As a threshold matter the Court must determine whether the case could have been brought in the Western District of Oklahoma. In that "a substantial part of the events or omissions giving rise to the claim" occurred there, it appears that venue in the Western District of Oklahoma is proper. 28 U.S.C. § 1391(e).

■ Turning to the relevant factors in this inquiry, the Court must consider, *inter alia*, the plaintiff's choice of forum. While ordinarily the plaintiff's choice of forum is entitled to deference, several decisions in this Circuit suggest that it is not entitled to any great weight where "the activities [forming the basis of the suit] have little, if any, connection with the chosen forum." *Armco Steel Co. v. CSX Corp.*, 790 F.Supp. 311, 323 (D.D.C.1991). *See also SEC v. Savoy Industries, Inc.*, 587 F.2d 1149, 1154 (D.C.Cir. 1978); *Comptroller of Currency v. Calhoun First Nat'l Bank*, 626 F.Supp. 137, 140 n. 9

(D.D.C.1985). "In weighing claims of convenience, the Court recognizes the diminished consideration accorded to a plaintiff's choice of forum where ... that forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Islamic Republic of Iran v. Boeing Co.*, 477 F.Supp. 142, 144 (D.D.C.1979).

■ Here, the District of Columbia has virtually no connection to the events giving rise to this action, save for an August 19, 1995 telephone call from Solicitor General Drew Days confirming that the Department of Justice would not overrule the El Reno warden's decision concerning visitation. Accordingly, this is a case where the plaintiff's choice of forum warrants "diminished consideration" due to this jurisdiction's lack of "meaningful ties to the controversy and [lack of a] particular interest in the parties or subject matter." *Islamic Republic*, 477 F.Supp. at 144.

Conversely, a multitude of factors militate in favor of transferring this case to Oklahoma. Important to this Court is the June 23, 1995 order of Chief Judge Russell concerning, *inter alia*, visitation to Terry Nichols. In that order, Chief Judge Russell stated:

"The [Bureau of Prisons] shall maintain a legal visiting list for Mr. Nichols. At the present time, that list includes only [five individuals were named, but Mrs. Nichols was not one of the five]. Additions to or deletions from that list shall be made by written notice, which may be faxed, to the Warden or his designee ... *Any disputes arising as to the performance of the foregoing terms shall be brought to the attention of the Court by filed written notice and shall be resolved upon hearing or in any other appropriate manner as determined by the Court.*"

Order, *United States of America v. Terry Lynn Nichols*, No. M–95–105–H (June 23, 1995) at 3–4 (emphasis added). Plainly, then, the subject of visitation has already been the subject of an order by a judge of the Western District of Oklahoma, a factor that weighs heavily in favor of transferring this matter to that jurisdiction.

In its motion, the government lists a number of additional factors that argue in favor of this case being transferred to Oklahoma. As example, the government notes, correctly, that any witnesses to be called concerning Nichols' motion, including the warden of the prison and the plaintiff himself, are either at the prison or elsewhere in Oklahoma. Prison records pertaining to Nichols' claim are located in Oklahoma as well. And, significantly, the criminal proceedings to which this motion relate are underway, *not* in the District of Columbia, but in Oklahoma City, where the criminal acts occurred for which Terry Lynn Nichols has been indicted. These factors all militate strongly in favor of the case being transferred to Oklahoma City.

Balanced against this multitude of factors is the plaintiff's interest in bringing this action in the District of Columbia. While the Court could, of course, retain jurisdiction in this case, the Court simply cannot find that the reasons presented by Nichols for maintaining this action in the District of Columbia are sufficient to outweigh the compelling reasons supporting transfer to Oklahoma. As previously noted, the District of Columbia has virtually *no* connection to the events giving rise to this action. Nor do plaintiff's concerns of bias, on the part of one or all judges of the Western District of Oklahoma, mandate that *this* court retain jurisdiction over this civil action.

In his opposition to the government's motion, counsel for Mr. Nichols argued strongly that due to a pending motion for recusal of all judges in the Western District of Oklahoma from the criminal case, which was filed yesterday by co-defendant Timothy McVeigh and joined by Mr. Nichols, Mr. Nichols is unable to obtain prompt relief in this civil action from the Western District of Oklahoma. Mr. Nichols contends that because of his allegations of bias on the part of the Oklahoma judges, "as a practical matter this is plaintiff's only jurisdiction for relief." Memorandum in Support of Motion, at 5. This is not necessarily so. Moreover, to the extent such a dilemma exists, it is a dilemma of plaintiff's own making.

Neither preceding his request for a contact visit, nor following the warden's refusal of the request did Mr. Nichols approach Chief Judge Russell or any other judge of the Western District of Oklahoma to seek modification of Chief Judge Russell's June 23, 1995 Order. Nor did Mr. Nichols seek review by means of a civil action, such as this action, of the warden's initial decision refusing the contact visit by a judge in the Western District of Oklahoma. This is perhaps unfortunate in light of the fact that the prosecutor in the criminal case against Mr. Nichols apparently does not object to a contact visit between Mr. and Mrs. Nichols. Had Mr. Nichols brought his case promptly in the Western District of Oklahoma, a judge of that court might have had an opportunity to grant the relief Mr. Nichols seeks.

▆ Rather than taking any of these actions to allow a judge of the Western District of Oklahoma to consider this matter, on Monday, August 21, 1995, Mr. Nichols instead brought his motion for a temporary restraining order in the District of Columbia, and on Tuesday, August 22, 1995, Mr. Nichols joined in Mr. McVeigh's motion to recuse all judges in the Western District of Oklahoma from the pending criminal case. However, the fact that plaintiff believes the judge in his *criminal* case in Oklahoma City should recuse does not give him license to select any other judge in any other judicial district to hear this civil case. This action could have been initiated and likely decided before the motion for recusal was filed. Moreover, while the Court is not oblivious to the need for rapid consideration of Mr. Nichols' motion for a temporary restraining order, let it not be overlooked that Oklahoma is blessed with three judicial districts: the Western, the Northern, and the Eastern. Many district court judges in Oklahoma or elsewhere in the 10th Circuit could consider this civil case, whether or not recusal is the order of the day.

Accordingly, balancing the relevant factors and considering the interest of justice, it is, by far, more appropriate that this case proceed in the United States District Court for the Western District of Oklahoma. And for this Court to grant the relief requested by Mr. Nichols would constitute an unjustifiable encroachment upon the June 23, 1995 deci-

sion of Chief Judge Russell—a co-equal Article III judge—directing that disputes concerning visitation be brought to *that* Court. That is an action *this* Court will not take.

Let there be no mistake: this decision has absolutely nothing to do with the merits of Terry Nichols' motion for a temporary restraining order granting him visitation with his wife. He may ultimately prevail; he may not. That is not this Court's decision to make. But one thing is clear: this case belongs in the Western District of Oklahoma and not in the District of Columbia.

### III. *Conclusion*

For the foregoing reasons, it is hereby

ORDERED that defendants' motion to transfer is granted. This case shall be transferred to the United States District Court for the Western District of Oklahoma.[4]

IT IS SO ORDERED.

---

4. Under the policy of this Court's clerk's office, developed pursuant to our Circuit's decision in *Starnes v. McGuire*, 512 F.2d 918 (D.C.Cir.1974), unless both parties notify the Court that they do not intend to seek review by the Court of Appeals, the clerk's office will hold this case for 20 days following the issuance of this Memorandum Opinion and Order. As the clerk's office explains in its policy memorandum, "[t]his delay of physical transfer of the case provides the parties an opportunity to challenge the transfer by petitioning [the Court of Appeals] for a Writ of Mandamus". Clerk's Office Memorandum (Sept. 20, 1987).