Leopold KAFACK, Plaintiff,

v.

PRIMERICA LIFE INSURANCE
COMPANY, et al.,
Defendants.

Civil Action No. 1:95CV01561 RMU.

United States District Court,
District of Columbia.

July 19, 1996.

David Huntington Williams, Williams & Eoannou, Bethesda, MD, for Plaintiff.

Bryan D. Bolton, Derek B. Yarmis, Funk & Bolton, P.A., Baltimore, MD, David A. Carter, Howell, Gately, Whitney & Carter, Towson, MD, Thomas M. Wood, IV, Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., Baltimore, MD, for Defendants.

## MEMORANDUM OPINION AND ORDER

URBINA, District Judge.

### Granting Motion to Transfer

This matter comes before the court upon Primerica Life Insurance Company (Primerica) and Federal Kemper Life Assurance Company's (Kemper) motion to transfer this action to the United States District Court for the District of Maryland.[1] After careful consideration of the pleadings and the entire record herein, the court concludes that the defendants' motion to transfer shall be granted because the present action could have been brought in Maryland and the interests of the parties and of potential witnesses, as well as the interest of justice dictate that the action be heard in that forum.

### I. Background

Leopold Kafack (Mr. Kafack), a resident of the District of Columbia, has lodged a civil complaint against Primerica, Kemper, Transamerica Occidental Life Insurance Company (Transamerica), and Equifax Credit Information Services, Inc. (Equifax). Primerica, Kemper, and Transamerica are insurance companies that sold separate life insurance policies to the plaintiff's father, Sontsa Kemetong (Mr. Kemetong). The plaintiff filed a seven count complaint based on the following causes of action: (1) breach of contract; (2) breach of fiduciary duty; (3) malicious prosecution; (4) defamation; (5) intentional infliction of emotional distress; (6) breach of implied covenant of good faith and fair dealing; and (7) tortious interference with contract. The breach of contract, breach of fiduciary duty, and breach of implied covenant of good faith and fair dealing causes of action are based on the issuance of the three insurance policies. Mr. Kafack alleges that the insurance company defendants entered into a conspiracy to deny him benefits due under these three life insurance policies, two of which were entered into in Maryland. The third policy was entered into in the District of Columbia. The malicious prosecution, defamation, intentional infliction of emotional distress, and tortious interference with contract causes of action are premised upon the allegation that all of the defendants maliciously aided a criminal prosecution of the plaintiff by Maryland authorities by falsely accusing the plaintiff of criminal conduct. Mr. Kafack's complaint requests a judgment for over $60,000,000 in compensatory and punitive damages against each of the defendants.

Mr. Kafack is the son of Mr. Kemetong, who is now deceased. Mr. Kafack is the named beneficiary of the three life insurance policies purchased by Mr. Kemetong. Mr. Kemetong was a citizen of the Republic of Cameroon. Mr. Kafack asserts that, between 1990 and 1992, Mr. Kemetong purchased from each of the defendant insurance companies, life insurance policies providing for a cumulative total death benefit of $1,000,000. Mr. Kafack maintains that Mr. Kemetong died of malarial fever on February 5, 1993 while in Cameroon on business. In late March and early April 1993, Mr. Kafack asserts that he applied to the defendants Primerica, Kemper, and Transamerica for payment of the life insurance policy proceeds due and owing as a result of his father's death. He avers that Primerica, Kemper, and Transamerica conspired to deny him the benefits due under the three life insurance policies and that they commissioned Equifax, a credit information corporation which compiles personal credit histories, to investigate the circumstances of the incident.

Mr. Kafack asserts that representatives of the defendants visited Cameroon to investigate the death of Mr. Kemetong. He contends that the defendants contacted Dr. E.R. Dipoko, a physician in Cameroon familiar

---

1. Equifax joins in and does not oppose the motion. Transamerica does not oppose the motion.

with the decedent and the circumstances surrounding his death. Dr. Dipoko stated to the defendants that he fabricated an initial death certificate to help Mr. Kemetong's family. Mr. Kafack maintains that in May 1993, Primerica advised him that it would not pay the proceeds of Mr. Kemetong's policy to the beneficiary and that it would seek criminal and civil sanctions against him if he pursued the claim. Mr. Kafack alleges that in June 1994, Transamerica informed him that it, too, refused to pay the proceeds of Mr. Kemetong's policy because Dr. Dipoko had stated that the death certificate which he provided was a "fabrication." Mr. Kafack alleges that Dr. Dipoko's use of the term "fabrication" meant that he helped to expedite the claim of the plaintiff and the plaintiff's family because he was familiar with the death of the insured.

Mr. Kafack also alleges that in June 1993 Kemper informed him that it would not pay the proceeds of Mr. Kemetong's policy because of various alleged discrepancies in the insured's application. Kemper, for its part, asserts that its investigation of Mr. Kemetong's death and the related insurance policy revealed that Mr. Kemetong had never entered the United States; that Mr. Kemetong's date of birth was closer to 1900 than the 1941 date represented in his insurance application; that Mr. Kemetong actually died earlier than was represented; that Mr. Kemetong's death certificate was fraudulent; and that the social security number given by the applicant belonged to a deceased Texas woman unrelated to Mr. Kemetong. As a result, Kemper refused to pay Mr. Kafack the proceeds of the insurance policy.

In addition to alleging that the defendant insurance companies refused to pay the proceeds of Mr. Kemetong's policies, Mr. Kafack asserts that Primerica, Kemper, Transamerica, and Equifax maliciously arranged his indictment in Montgomery County, Maryland, for the felony of attempted theft and fraudulent insurance acts. In September 1994, Mr. Kafack was acquitted of all charges by a Montgomery County, Maryland, judge.

Presently before the court is Primerica and Kemper's motion to transfer this action to the District of Maryland.

## II. Analysis

The defendants seek to transfer this case to the state of Maryland pursuant to 28 U.S.C. § 1404(a) which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The moving party bears the burden of establishing that the transfer of this action is proper. *Air Line Pilots Ass'n v. Eastern Air Lines*, 672 F.Supp. 525, 526 (D.D.C. 1987); *Int'l Brotherhood of Painters & Allied Trades Union v. Best Painting & Sandblasting Co.*, 621 F.Supp. 906, 907 (D.D.C. 1985). Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 27, 108 S.Ct. 2239, 2242–43, 101 L.Ed.2d 22 (1988) (*quoting Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964)).

The threshold question under Section 1404(a) is whether the action might have been brought in Maryland. *Van Dusen*, 376 U.S. at 613, 84 S.Ct. at 807–08. In a suit based on diversity, as is this one, venue is proper in: "(1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ...; or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a). In the case at bar, venue is proper in Maryland under 28 U.S.C. § 1391(a)(2) since the plaintiff's claims arise out of a nucleus of facts that, for the most part, took place in Maryland.

Specifically, two of the insurance policies were issued in Maryland, one of which was issued in Maryland while the plaintiff was residing in Silver Spring, Maryland. With respect to the third policy, which was entered into in the District of Columbia with Transamerica, the plaintiff engaged in activities in

Maryland that led to his indictment and prosecution there. For instance, the plaintiff mailed his claim form to Transamerica's office in Silver Spring, Maryland. In addition, he personally visited the office in Maryland to facilitate the processing of his claim after the insured's death. Furthermore, the acts that allegedly led to the plaintiff's wrongful prosecution occurred in Maryland. Mr. Kafack completed both the Kemper and Primerica insurance claim forms for proceeds in Maryland. These insurance claim forms contained the alleged misrepresentations that led to Mr. Kafacks's indictment and prosecution. Kemper, Primerica, and Transamerica allegedly made defamatory statements about Mr. Kafack in Maryland to the Maryland Insurance Administration's Anti–Fraud Unit. Lastly, the official investigation of Mr. Kafack's activities was conducted in Maryland, and Maryland was the forum of the alleged malicious prosecution. Most of the events that form the factual predicate for Mr. Kafack's claims occurred in Maryland. As a result, Mr. Kafack could have brought the instant action in Maryland.

■ The court's inquiry proceeds to the issue of whether the case should be transferred based on the convenience of the parties, the convenience of the witnesses, and the interests of justice. In ruling on Section 1404(a) motions, courts have not, however, limited their consideration to these three enumerated factors but have considered many variants including the private interests of the parties and the public interests of the court, which are protected by the language of Section 1404(a). *Jumara v. State Farm Insurance Co.,* 55 F.3d 873, 879 (3rd Cir.1995); *see also Heller Financial, Inc. v. Riverdale Auto Parts, Inc.,* 713 F.Supp. 1125, 1129 (N.D.Ill.1989). The private interest considerations include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants;[2] (2) the defendants' choice of forum;[3] (3) whether the claim arose elsewhere;[4] (4) the convenience of the parties;[5] (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;[6] and (6) the ease of access to sources of proof.[7]

■ The public interest considerations include: (1) the transferee's familiarity with the governing laws;[8] (2) the relative congestion of the calendars of the potential transferee and transferor courts;[9] and (3) the local interest in deciding local controversies at home.[10] These factors, which the court will address in turn, unequivocally support a transfer to the Southern Division for the District of Maryland.

## A. Private Considerations

■ The court must afford some deference to the plaintiff's choice of forum. *Air Line Pilots Ass'n,* 672 F.Supp. at 526. However, this deference is mitigated where the plaintiff's choice of forum has "no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Chung v. Chrysler Corp.,* 903 F.Supp. 160, 165 (D.D.C. 1995) (*quoting Islamic Republic of Iran v. Boeing Co.,* 477 F.Supp. 142, 143–44 (D.D.C. 1979)). In the case at bar, the plaintiff's choice of forum, the District of Columbia, has no meaningful ties to or interest in this suit. Maryland, on the other hand, possesses a significant interest in this suit because all of the material events that constitute the factual predicate for the plaintiff's claims occurred

---

**2.** *Int'l Brotherhood,* 621 F.Supp. at 907.

**3.** 15 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters,* § 3848 at 385 (2d ed. 1986).

**4.** *Jumara,* 55 F.3d at 878.

**5.** *Air Line Pilots Ass'n,* 672 F.Supp. at 526.

**6.** 15 Wright, Miller, & Cooper § 3848, at 420–422.

**7.** *Armco Steel Co. v. CSX Corp.,* 790 F.Supp. 311, 323 (D.D.C.1991).

**8.** *Id.* at 324.

**9.** *SEC v. Savoy Industries,* 587 F.2d 1149, 1156 (D.C.Cir.1978).

**10.** *Jumara,* 55 F.3d at 879.

there. The substantive acts relevant to this suit occurred in Maryland; the only relationship this suit bears to the District of Columbia is the fact that the plaintiff is a resident of the District of Columbia.[11] Cases decided under Section 1404(a), however, "have laid much less emphasis on this [residence] factor." *King*, 709 F.Supp. at 262 (*citing* 15 Wright, Miller & Cooper, § 3489).

This action involves Maryland contracts and allegedly tortious conduct in Maryland. Specifically, the plaintiff's non-tort claims involve two life insurance policies that were entered into in Maryland. With respect to the third policy, the plaintiff engaged in activities in Maryland which led to his indictment and prosecution there for fraud. Furthermore, the plaintiff alleges tort claims that arise out of the plaintiff's criminal prosecution in Maryland. The insurance agents who processed the insurance applications work and reside in Maryland, and the Maryland Anti-Fraud Unit officials to whom the defendants allegedly made defamatory statements about the plaintiff are located in Maryland. Finally, the officials and records related to the investigation and prosecution of Mr. Kafack are also located in Maryland.

Mr. Kafack argues that the court should not transfer this case to the Northern Division (Baltimore) for the District of Maryland. This case, however, would not be transferred to the Northern Division. This case "shall be assigned" to the Southern Division for the District of Maryland, in Greenbelt, Maryland, because the "events giving rise to the claims set forth in the complaint occurred in the Southern Division."[12] Montgomery County, Maryland, where the prosecution of the plaintiff took place, is in the Southern Division. Furthermore, two of the insurance policies were purchased in Montgomery County, and the plaintiff traveled there with respect to the third policy in order to facilitate the processing his claim.

Mr. Kafack also argues that this court should not transfer this case to the Southern Division for the District of Maryland because it would inconvenience a number of his witnesses who reside in the District. In addition, Mr. Kafack states that the witnesses who will travel from Cameroon will find it more convenient if the case were tried in this jurisdiction. The court concludes, however, that the convenience of the parties and witnesses would not be significantly disturbed by the transfer of this case to the Southern Division of the District of Maryland. Maryland and the District of Columbia are in close proximity, thereby minimizing any inconvenience to the parties or the witnesses.[13] Due to the close proximity of Maryland, the transfer of this case will not increase the costs for the witnesses from Cameroon or from the District of Columbia. There are several international airports near Maryland. Furthermore, the courthouse in Greenbelt is also within one mile of a Metro Station. Any increased cost to the witnesses for traveling to Maryland is not dispositive since 28 U.S.C. Section 1821 provides for reimbursement to witnesses, including witness fees and mileage reimbursement. Finally, the plaintiff has not asserted that the witnesses will be unavailable for trial in Maryland. *See Jumara*, 55 F.3d at 878.

11. *See King v. Navistar Int'l Trans. Corp.*, 709 F.Supp. 261, 262–3 (D.D.C.1989) (granting transfer where the plaintiff was a resident of the District of Columbia and all of the events were "inextricably linked to the state of Virginia."); *SEC v. Ernst & Young*, 775 F.Supp. 411, 414 (D.D.C.1991) (granting transfer where "no underlying operative facts arose in the District of Columbia"); *Nichols v. U.S. Bureau of Prisons*, 895 F.Supp. 6, 8 (D.D.C.1995) (granting transfer where the District of Columbia had virtually no connection to the action except for a telephone call); *Harris v. Republic Airlines, Inc.*, 699 F.Supp. 961, 963 (D.D.C.1988) (granting transfer where the plaintiff's choice of forum had an "extremely tenuous" relationship to the District of Columbia and the circumstances giving rise to the dispute were centered in Minnesota); *Schmid*

*Laboratories, Inc. v. Hartford Accident and Indemnity Co.*, 654 F.Supp. 734 (D.D.C.1986) (granting transfer where no part of the insurance contracts at issue were negotiated, entered into or performed in the District of Columbia).

12. Standing Order Concerning the Assignment of Civil Cases to the Southern Division for the District of Maryland. J. Frederick Motz, United States District Judge, Nov. 17, 1995.

13. *See King*, 709 F.Supp. at 262. The court in *King* stated that the "close proximity" of the Eastern District of Virginia to the District of Columbia would not disturb the convenience of the parties and witnesses.

The plaintiff also asserts that he and his witnesses will be inconvenienced by having to conduct discovery in Maryland. The court notes, however, that the plaintiff's counsel practices out of a Maryland office. Furthermore, Fed.R.Civ.P. 45 provides for discovery within 100 miles of the residence or place of the employment of a witness. Thus, the plaintiff's witnesses could be compelled by the defendants, pursuant to Rule 45, to provide deposition testimony in Maryland. This rule encompasses all of the U.S. non-party witnesses involved in this suit. The representatives of the Embassy of Cameroon presumably have diplomatic immunity, and thus they are subject neither to the jurisdiction nor the deposition subpoena power of this court.[14] *See Aidi v. Yaron,* 672 F.Supp. 516 (D.D.C.1987); The Diplomatic Relations Act of 1978, 22 U.S.C. Section 254a; *Republic of Philippines v. Marcos,* 665 F.Supp. 793, 800 (N.D.Cal.1987).

The location of the sources of evidence also favors the transfer of this suit. Virtually all of the incidents giving rise to the plaintiff's claims occurred in Maryland. The majority of witnesses and records, including pertinent judicial and investigative records, are located in Maryland.[15] Specifically, all of the insurance representatives involved with the two life insurance policies purchased in Maryland are based there. In addition, Kemper and Primerica's records relating to those transactions are all found in Maryland offices. As to the third policy entered into in the District of Columbia with Transamerica, the plaintiff engaged in activities in Maryland that led to his indictment in that forum. The plaintiff mailed his claim form to Transamerica's office in Silver Spring, Maryland, and Transamerica's records are found in that office. With respect to the tort claims that arise out of the criminal prosecution, most of the non-party witnesses live and work in Maryland. For example, the insurance agents who pro-

cessed the insurance applications, the Maryland Anti–Fraud Unit officials who received the defendants' allegedly defamatory statements, and the officials who investigated and prosecuted Mr. Kafack for insurance fraud all live and work in Maryland.[16] Given these facts, the court concludes that the location of the documents and witnesses relevant to this suit warrant the transfer of this action to the Southern Division for the District of Maryland.

## B. Public Considerations

The interests of justice favor the transfer of this case to Maryland. The interests of justice are best served by having a case decided by the federal court in the state whose laws govern the interests at stake. *See Schmid Laboratories,* 654 F.Supp. at 737; *Islamic Republic of Iran,* 477 F.Supp. at 144; *see also King,* 709 F.Supp. at 262. Under the District of Columbia's choice of law rules, the law governing the plaintiff's claims is the law of the state with the most significant relationship to the matters at issue. *Church of Scientology Int'l v. Eli Lilly & Co.,* 848 F.Supp. 1018, 1026 (D.D.C.1994). The resolution of this dispute will predominantly involve the interpretation of Maryland law because two of the contracts in dispute were entered into in Maryland and because the criminal prosecution and related events underlying the tort actions occurred in Maryland. Although transferring the case to a district court in Maryland is not the same as transferring the case to a Maryland state court, the district court in Maryland is more familiar than this court with the application of Maryland law. *See Armco Steel Co.,* 790 F.Supp. at 311, 324; *Van Dusen,* 376 U.S. at 645, 84 S.Ct. at 824. Transfer of this action to the Southern Division for the District of Maryland, which is already thoroughly familiar and experienced with the law relevant to

---

**14.** These witnesses are also not subject to the jurisdiction or subpoena power of the Maryland District Court.

**15.** *See Comptroller of the Currency v. Calhoun First Nat'l Bank,* 626 F.Supp. 137 (D.D.C.1985) (granting transfer where an investigation giving rise to the suit was conducted in Georgia and "all of the depositions taken, records obtained, and other evidence gathered in the course of the

investigation [were] in locations embraced by the Northern District of Georgia.").

**16.** The plaintiff also does not assert that the related documents in the District of Columbia are so voluminous that they cannot be transported to Maryland. *See Heller Financial,* 713 F.Supp. at 1130.

this action, will therefore promote judicial economy. *See Zurich Ins. Co. v. Raymark Industries, Inc.*, 672 F.Supp. 1102, 1104 (N.D.Ill.1987).

The relative docket congestion and potential speed of resolution with respect to both the transferor and transferee courts are also appropriate factors to consider. *See SEC v. Savoy Industries, Inc.*, 587 F.2d 1149, 1156 (D.C.Cir.1978). Given the fact that Kemper and Primerica timely moved to transfer this case, it is not evident that a transfer to the Southern Division for the District of Maryland would lead to unnecessary delay. Due to the scheduling of other civil and criminal matters, the earliest this court could schedule a trial date in this matter would be in November 1997.[17] Additionally, this court has neither dealt with other issues in the suit nor has familiarized itself with the underlying merits of the case.[18] Since this case is in its earliest stages, there would be no delay associated with the Maryland district court's having to familiarize itself with this case. *See Zurich Insurance Co.*, 672 F.Supp. at 1104.

Finally, this court should defer to the more compelling interest of the State of Maryland in having this localized controversy decided at home. *See Armco Steel Co.*, 790 F.Supp. at 324. The majority of the operative events, including the prosecution of the plaintiff and the investigation about which he is complaining, took place in Maryland. As a result, the State of Maryland has a substantial interest in resolving the underlying claims of Mr. Kafack's lawsuit. Furthermore, controversies should be resolved in the locale where they arise and where related litigation existed. *See Islamic Republic of Iran*, 477 F.Supp. at 144. Since Mr. Kafack's current claims are related to his prior prosecution for fraud in Maryland, a transfer to the District of Maryland is advisable.

Accordingly, it is this 18th of July 1996.

17. Assuming that no other criminal matters arise in the intervening months that would necessitate the court's attention.

18. *Compare Savoy Industries, Inc.*, 587 F.2d at 1156. In *Savoy*, the court of appeals upheld the district court's denial to transfer where the defendants moved to transfer the case one week

**ORDERED** that the defendants' motion to transfer this action to the United States District Court for the Southern District for Maryland be and is hereby **granted;** and it is further ordered that all other motions be and are hereby **denied without prejudice.**

**SO ORDERED.**

prior to the scheduled trial date. In addition, congestion in the transferee court indicated that a more prompt trial could have been had in the District of Columbia. Finally, the District of Columbia court had a "familiarity with the allegations, characters, lawyers and previous history of litigation...." *Id.* at 1156–57.