**Kamran MASHAYEKHI and Claudia Mashayekhi, Plaintiffs,**

**v.**

**IRAN, and Iran National Radio and Television, Defendants.**

Civ. A. No. 79–2039.

United States District Court, District of Columbia.

June 10, 1981.

James E. Ritchie, Richard P. Crane, Jr., Los Angeles, Cal., for plaintiffs.

Thomas G. Shack, Jr., Christine Cook Nettesheim, Washington, D. C., for defendants.

## MEMORANDUM

GESELL, District Judge.

This is a civil action for damages brought pursuant to the Foreign Sovereign Immunities Act ("FSIA").

The issue now presented on defendants' motion to dismiss is whether an Iranian citizen can invoke that Act to recover money allegedly due him under his former employment contract with an instrumentality of the Iranian Government for work done in the United States. The motion to dismiss attacks the jurisdiction of the Court and asserts, in the alternative, that defendants are immune from suit.

Plaintiff Kamran Mashayekhi [1] formerly worked as Bureau Chief of the Washington, D. C., office of Iran National Radio and Television, now known as Voice and Vision of the Islamic Republic of Iran. National Radio and Television operated as part of the Iranian Bureau of Information under a budget established by the government. It performed informational and propaganda services from the United States. As an arm of the Iranian government it developed radio and television coverage of activities in the United States and transmitted the material for use in Iran on the nationally controlled radio and television network. Dissemination in Iran was effected in accordance with official policy. On occasion, the agency made available to American media materials from Iran. With the fall of the Shah, plaintiff's employment ceased and he went into hiding in this country. His claim is for salary, benefits, and advances not reimbursed. To protect his position, he allegedly appropriated from Voice and Vision two violins and other valuable musical instruments, at least some of which he now admittedly holds as security. Voice and Vision has counterclaimed for these items.

This case arises in the context of the Treaty of Amity, Economic Relations, and Consular Rights Between the United States of America and Iran, signed by the two nations in 1955. This Treaty has never been abrogated and has remained in effect.[2] Under the FSIA, passed by Congress in 1976, what were then "existing international agreements" remained valid and superior to the FSIA wherever the terms concerning immunity contained in the previous agreement conflict with the FSIA. *See* 28 U.S.C. § 1604 (1976); H.R.Rep. No. 94–1487 at 17–18, *reprinted in* [1976] U.S.Code Cong. & Admin.News 6604, 6616.

Defendants contest federal jurisdiction, asserting that this Court has no jurisdiction because the plaintiff is a citizen of a foreign state suing defendants who both are foreign entities, and the common law contract claim finds no basis in any particularized grant of federal jurisdiction. Relying on the reasoning of the United States Court of Appeals for the Second Circuit in its recent decision in *Verlinden B.V. v. Central Bank of Nigeria*, 647 F.2d 320 (2d Cir. 1981), defendants contend that the limited jurisdiction of the federal courts, as set forth in Article III, Section 2 of the Constitution, does not extend to claims such as the one presented here. Although the FSIA appears to grant jurisdiction to the federal courts to hear claims like those of plaintiff,

---

1. The claim of co-plaintiff Claudia Mashayekhi, an American citizen and wife of Kamran Mashayekhi, was severed on her unopposed motion by Order of the Court on April 22, 1981. The severance was without prejudice to prosecution of her claim through arbitration pursuant to the Algerian Accords agreed to by the United States and Iran. No provision of the Accords relates directly to Kamran Mashayekhi's claim.

2. The treaty is printed at 8 U.S.T. 899, T.I.A.S. 3853. The continuing validity of the treaty has been recognized by numerous courts reviewing suits between citizens of the two nations.

*see* 28 U.S.C. § 1330(a) (1976), it is clear under the reasoning of *Verlinden* that the Act cannot grant jurisdiction beyond those circumstances for which there is some underlying constitutional basis on which that grant can rest. Diversity, of course, is not available as a constitutional basis for the jurisdiction, because all of the parties are foreign. The issue, then, as the *Verlinden* decision recognized, is whether this case in some way "arises under" the laws of the United States. The Court finds that it does. As the Second Circuit noted in *Verlinden,* at 325, there are occasions on which the national interest is sufficiently strong to compel use of a federal rule of decision rather than state law, and in such a situation there is federal jurisdiction. *Cf. Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). That is the situation here, where the heightened tensions between the two nations involved and the existence of hundreds of suits have created an exceedingly strong federal interest in consistent interpretation of the Treaty of Amity and its immunity provisions as they are read in the light of the FSIA. Although this case is for breach of contract, the meaning of the Treaty is at the core of any decision and the strong federal interest in the interpretation of the Treaty and the resolution of these numerous disputes is sufficient to ground federal court jurisdiction.

■ Turning to the merits, defendants argue that the limited waiver of immunity in Article XI of the Treaty of Amity does not apply in this case and that plaintiff's claim is thus barred. In particular, defendants contend that the "enterprises" for which immunity is waived under the Treaty are only those which are privately owned and controlled and engaged in commercial activity for economic gain within the United States. In support of this interpretation, defendants have engaged in a careful analysis of the language of the Treaty itself, and also have submitted a wide variety of documentary evidence, including material drawn from negotiating documents, governmental statements made in connection with this and similar treaties, analyses by commentators, and, perhaps most important, recent statements by the United States that reflect the government's present interpretation of immunity under the Treaty.

Upon reviewing the material presented and the arguments of counsel, the Court agrees with defendants that the governmental, not-for-profit nature of the activities of Iran and of Voice and Vision fall within the scope of activities for which Iran and its instrumentalities have retained immunity. Neither Iran nor Voice and Vision has waived its immunity by virtue of its activities under the terms of the Treaty of Amity and that immunity will be recognized, thus making it necessary to grant defendants' motion to dismiss.

At oral argument, counsel for Voice and Vision made it clear that its protective counterclaim for the return of the musical instruments will not be pursued if plaintiff's claim is dismissed on the grounds of immunity.

Accordingly, defendants' motion to dismiss the complaint is granted. The complaint is dismissed, without prejudice to all parties pursuing relief in other forums if they so choose. The counterclaim is withdrawn.

SO ORDERED.