**AF–CAP, INC., Plaintiff,**

v.

**THE REPUBLIC OF CONGO,
Defendant.**

**No. CIV.A.03–1963 JR.**

United States District Court,
District of Columbia.

July 23, 2004.

Kenneth P. Kaplan, Greenberg Traurig, Washington, DC, for Plaintiff.

Sara D. Schotland, Michael Robert Lazerwitz, Cleary, Gottlieb, Steen & Hamilton, Washington, DC, for Defendant.

### *MEMORANDUM*

ROBERTSON, District Judge.

This lawsuit involves an application for issuance of attachment and writ of *fieri facias*. Before the Court is Af–Cap, Inc.'s motion to strike all defenses and to issue writ of *fieri facias,* and defendant Republic of Congo's opposition thereto. Congo argues that the embassy is entitled to immunity pursuant to the Foreign Sovereign Immunities Act (the "FSIA"), codified at 28 U.S.C. § 1602–1611, and the Vienna Convention on Diplomatic Relations (the "Vienna Convention"), 23 U.S.T. 3227 (April 18, 1961). In the alternative, Congo contends that this action is barred by the

doctrine of collateral estoppel. For the reasons stated below, Af–Cap's motion is **denied** and the case is **dismissed,** *sua sponte,* for lack of subject matter jurisdiction.

## Background

On February 1, 2000, Connecticut Bank of Commerce, a predecessor-in-interest to Af–Cap, obtained a default judgment against Congo in the amount of $10,375,244.83 plus interest and costs in the Supreme Court of the State of New York, Kings County. The Bank registered that judgment in a Texas state court and obtained from the clerk of that court, a writ of garnishment against a group of oil companies. On February 9, 2001, Congo and the garnishees removed the garnishment action to the United States District Court for the Western District of Texas and moved to dismiss. The district court dissolved the writs of garnishment and dismissed the action, holding, *inter alia,* that the garnishees' debts—royalty and tax payments owed by the oil companies to Congo—did not arise from a "commercial activity in the United States," 28 U.S.C. § 1610(a), and were immune from attachment.

On appeal, the United States Court of Appeals for the Fifth Circuit held that the dispositive factual question was what the royalties and tax payments were "used for," and not the question the district court had focused on—how they were generated. The court held that "[i]f it turns out [upon remand] that the royalties and tax obligations are not used for any commercial activity in the United States, the district court should dissolve the writs of garnishment and dismiss the action." *Conn.*

*Bank of Commerce v. Republic of Congo,* 309 F.3d 240, 260–61 (5th Cir.2002), *amending on denial of reh'g,* 2002 WL 1573488 (5th Cir.2002). On April 7, 2003, upon remand, the district court held that Congo does not use the royalties and tax payments for commercial activities in the United States. According to both parties, Af–Cap's appeal of that decision is pending before the Fifth Circuit.

On July 14, 2003, Af–Cap registered the Kings County default judgment with the Superior Court of the District of Columbia and then filed the application for issuance of attachment and writ of *fieri facias* (now under review). Congo removed the action to this Court on September 23, 2003.[1] In the District of Columbia, Af–Cap seeks to attach real property of Congo located at 4891 Colorado Avenue, N.W., Washington, D.C., and 5030 16th Street, N.W., Washington, D.C. It is undisputed that the property identified for attachment is the embassy of Congo.

## Analysis

*Foreign Sovereign Immunities Act*

■ Af–Cap's argument that Congo waived its right to assert sovereign immunity under the FSIA in the Texas case is rejected.[2] "[T]he FSIA 'must be applied by the district courts in every action against a foreign sovereign, since subject-matter jurisdiction in any such action depends on the existence of one of the specified exceptions to foreign sovereign immunity.'" *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 434–35, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989) (quoting *Verlinden B.V. v. Cent. Bank of*

---

1. "Solely for purposes of this proceeding, Af–Cap acknowledges that 28 U.S.C. § 1441(d) allows for removal of cases brought in a state court against a foreign state, and therefore withdraws any objection to this Court as a

proper forum to resolve this action." Pl.'s Reply, at 5 n. 2.

2. The Fifth Circuit rejected it, too. *See Conn. Bank of Commerce,* 309 F.3d at 251.

*Nigeria,* 461 U.S. 480, 493, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983)). "The Act itself grants federal courts jurisdiction over civil actions against foreign states ... and it governs the extent to which a state's property may be subject to attachment or execution." *Republic of Austria v. Altmann,* —— U.S. ——, ——, 124 S.Ct. 2240, 2249, 159 L.Ed.2d 1, —— (2004). The FSIA requires that attachment of a foreign state's property be accomplished by a court order. *See* 28 U.S.C. § 1610(c) ("No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution ....").

■ American property owned by a foreign state can be immune from attachment, but not if it is "used for a commercial activity" and, *inter alia,* "the foreign state has waived its immunity from attachment." 28 U.S.C. § 1610(a)(1). Congo asserts that its embassy does not satisfy the "commercial activity" exception. I agree.

"Commercial activity" is defined in the general definitions section of the FSIA as

> either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather that by reference to its purpose.

28 U.S.C. § 1603(d). Interpreting this definition in the context of the commercial activity exception to jurisdictional immunity (not directly implicated here), *see id.* § 1605(a)(2), the Supreme Court explained:

> [Section 1603(d)] leaves the critical term "commercial" largely undefined: The first sentence simply establishes that the commercial nature of an activity does not depend upon whether it is a single act or a regular course of conduct; and the second sentence merely specifies what element of the conduct determines commerciality (*i.e.,* nature rather than purpose), but still without saying what "commercial" means. Fortunately, however, the FSIA was not written on a clean slate. As we have noted, the Act (and the commercial exception in particular) largely codifies the so-called "restrictive" theory of foreign sovereign immunity first endorsed by the State Department in 1952. The meaning of "commercial" is the meaning generally attached to that term under the restrictive theory at the time the statute was enacted.

. . . .

> ... [W]e conclude that when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are "commercial" within the meaning of the FSIA. Moreover, because the Act provides that the commercial character of an act is to be determined by reference to its "nature" rather than its "purpose," 28 U.S.C. § 1603(d), the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in ."trade and traffic or commerce."

*Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 612–14, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992) (internal citation and emphasis omitted).

*Weltover*'s filigree upon the commercial activity exception is not really necessary, however, to conclude that Congo's embassy property is not subject to attachment.

The proposition was nearly self-evident to the drafters of the FSIA, *see* 1976 U.S.Code Cong. & Admin. News 6604, 6628 ("embassies and related buildings could not be deemed to be property used for a 'commercial' activity as required by section 1610(a)"), and numerous courts have confirmed that view. *See, e.g., City of Englewood v. Socialist People's Libyan Arab Jamahiriya*, 773 F.2d 31, 36–37 (3d Cir.1985) (use of property as a diplomatic residence "as a matter of law ... is not commercial activity"); *Flatow v. Islamic Republic of Iran*, 76 F.Supp.2d 16, 22 (D.D.C.1999) (use of the embassy and residences of Iran to support Iran's diplomatic activities "was sovereign in nature, not commercial"); *S & S Machinery Co. v. Masinexportimport*, 802 F.Supp. 1109, 1111–12 (S.D.N.Y.1992) (mission buildings are not used for commercial activity and do not fall within FSIA exception to immunity).

The Congolese embassy is not "used for a commercial activity," and does not fall within the FSIA's immunity exception of § 1610(a).

*Vienna Convention on Diplomatic Relations*

 Even if the Congolese embassy were not immune from attachment under the FSIA, it would be immune from attachment under the Vienna Convention on Diplomatic Relations. *See, e.g., Mashayekhi v. Iran*, 515 F.Supp. 41, 42 (D.D.C. 1981) ("Under the FSIA ..., what were then 'existing international agreements' remain[ ] valid and superior to the FSIA wherever terms concerning immunity contained in the previous agreement conflict with the FSIA."). It is undisputed that Af–Cap's target of attachment is, and is only, the Congolese embassy. Article 22 of the Vienna Convention provides:

1. The premises of the mission shall be inviolable. The agents of the receiving State may not enter them, except with the consent of the head of the mission.

2. The receiving State is under a special duty to take all appropriate steps to protect the premises of the mission against any intrusion or damage and to prevent any disturbance of the peace of the mission or impairment of its dignity.

3. The premises of the mission, their furnishings and other property thereon and the means of transport of the mission shall be immune from search, requisition, attachment or execution.

23 U.S.T. 3227, at Art. 22. The language of this Article "contains the advisedly categorical, strong word 'inviolable' and makes no provision for exceptions other than those set forth in Article 31," (which is not applicable here). *767 Third Ave. Assocs. v. Permanent Mission, Republic of Zaire*, 988 F.2d 295, 298 (2d Cir.1993).

Although the Vienna Convention refers only to "mission," the term generally used is "embassy." *United States v. Kostadinov*, 734 F.2d 905, 906 n. 1 (2d Cir.1984). The United States and Congo are parties to the Vienna Convention on Diplomatic Relations. Because the Vienna Convention expressly provides that "[t]he premises of the mission ... shall be immune from ... attachment," the embassy must be accorded immunity under the Convention.

### *ORDER*

For the reasons set forth in the accompanying memorandum, plaintiff's motion to strike all defenses and to issue writ of *fieri facias* [3/4] is **denied**, and case is **dismissed**, *sua sponte*, for lack of subject matter jurisdiction.